NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY v. WILLIAM M. MARION.

It appeared that Marion (plaintiff below) was a brakeman in the employ of the railroad company (defendant below), and received the injury for which he claimed damages while standing on a moving freight car in the discharge of his duty, by contact with a bar of iron connecting the upper part of the trusses of a bridge constructed by the company, and over which the car was passing, and that the bar was of small dimensions and placed at a height which permitted a man standing on some cars to pass in safety, while upon other cars he would be struck. *Held*—

1. That there was no error in refusing to nonsuit, for upon those facts there were questions for the jury.

2. *Baylor* v. *Delaware, Lackawanna and Western Railroad Co.*, 11 *Vroom* 23, distinguished.

This was an action to recover damages for an injury received by Marion (defendant in error) by reason of his coming in contact with a bar of iron which connected the tops of the trusses of a railroad bridge constructed by the railroad company (plaintiff in error), while he was passing the bridge upon a freight car in the performance of his duty as a brakeman in the employ of said company.

Argued at June Term, 1893, before Justices DIXON, MAGIE and GARRISON.

For the plaintiff in error, *John W. Taylor.*

For the defendant in error, *Zebulon M. Ward.*

The opinion of the court was delivered by

MAGIE, J.　Counsel for the railroad company has confined his argument to the assignment of errors, which is directed at the refusal of the trial judge to nonsuit the plaintiff below.

His contention is that the facts of this case are identical with those disclosed in *Baylor* v. *Delaware, Lackawanna and Western Railroad Co.*, 11 *Vroom* 23, in which this court held there should have been a nonsuit, and that, in refusing the motion, the trial judge in this case disregarded the legal rule there laid down.

This contention cannot prevail.

In the Baylor case a brakeman was injured by coming in contact with a solid, overhanging bridge, by which a road was carried over the railroad on which he was passing in the employ of the railroad company.

The legal rule laid down in that case was that a railroad company owed to its brakemen no duty to build such bridges at an elevation sufficient to permit a man standing on a car

to pass in safety. Since it may be, in some cases, impracticable for the company so to construct such bridges, and in other cases it may be unreasonable to require such construction, the general proposition laid down is not objectionable.

It was unnecessary to qualify the proposition in that case, for, upon the evidence, it appeared that Baylor entered upon his employment with a knowledge of the danger to which he would be exposed, and that he had, on previous occasions, passed the bridge by daylight, when the danger, which was clearly an obvious one, must have appeared to him.

In the case before us, the dangerous element in the construction of the bridge was a slender bar crossing the track at a height which permitted brakemen standing on some cars to pass in safety, while on other cars they would come in contact with the bar. It cannot be said that such a danger was necessarily an obvious one. Upon the evidence, it might well be deemed difficult, if not impossible, for a brakeman to calculate the distance of the bar from the roof of a car and to determine whether or not it was a danger to his safety.

The duty of a railroad company in the construction of bridges falls within the line of duty of a master to a servant, requiring the master to take reasonable care to have and maintain the places in which, and the appliances with which, the servant is to perform his service, free from those dangers, the risk of which the servant has not assumed by his acceptance of employment. If a bridge constructed with the required care presents a danger obvious to the senses of the employed, the danger is one incident to the employment, and for injuries received therefrom the company would not be liable. But if, notwithstanding the exercise of the required care, the bridge, as constructed, presents a concealed or non-obvious danger, then a duty devolves on the company to give its brakemen sufficient notice thereof. For injuries received from such a construction, the company would be liable unless such notice had been given to the injured or he had otherwise acquired knowledge of the danger.

Upon the evidence in this case, questions arose as to whether

such notice had been given to Marion and whether he had otherwise acquired knowledge of the danger to which he was exposed by this bridge.   These were clearly questions for the jury, and the refusal to nonsuit was proper and in no respect antagonistic to the law announced in the Baylor case.

There are other assignments of error contained in the printed book, but they will not be dealt with, because counsel for the plaintiff in error has not argued them, and, upon examination of the files of the court, we find no bills of exception.

The judgment should be affirmed.

DIXON, J., concurs.

GARRISON, J. (dissenting).   I cannot unite with my colleagues in ignoring the bill of exceptions in this case.  . The cause was argued by the defendant in error upon these exceptions without questioning their validity.'   Indeed, such a suggestion has not been at any time made by any party in interest.   The fact that, upon examination of the files after the argument no bill of exceptions is found, does not, in my judgment, authorize the court, of its own motion, to reject a substantial part of the printed case used upon the argument, without criticism.

I am furthermore unable to join in the view that the omission of the plaintiff in error to argue a given assignment is equivalent to its abandonment.   The assignment of error in the bill of exceptions is argued *in extenso* by the defendant in error in his printed brief, and is, for all purposes, part of the case.

Regarding the exceptions as up for review upon the errors assigned by the plaintiff and argued by the defendant, I think there was error in the charge of the trial court with respect to the legal effect of the omission of the railroad company to provide a certain mechanical contrivance called "telltales," to warn the plaintiff, its servant, of the approach to the low bridge.

The language of the trial judge was as follows:

98    NEW JERSEY SUPREME COURT.

N. Y., Susq. and West. R. R. Co. v. Marion.    *57 N. J. L.*

" The plaintiff says if they (the railroad company) had constructed the bridge so low as likely to strike the brakeman upon the top of the car, then reasonable judgment and reasonable care would have dictated that in advance of that bridge they should hang these ' tell-tales ' so as to warn the brakeman that he was approaching a dangerous structure. Now, it is for you to say how that is. The law lays down the rule to you that you shall exact of the company reasonable judgment and reasonable care, and then the law asks you to say whether in this particular instance reasonable judgment and reasonable care were exercised. If they were not, then the company is held responsible. If that bridge, so constructed without ' tell-tales,' was dictated by reasonable judgment and reasonable care on the part of the company, then there is no responsibility and the defendant must be acquitted; but if you think the company failed, then you come to another inquiry, and that inquiry is this, Was the plaintiff informed substantially of this condition of things before he entered the service of the company or in time for him to quit it before the accident ? "

This statement premises the law to be that the company owed to the plaintiff the duty of providing the device called " tell-tales " if reasonable judgment and care dictated its employment for his safety at the point in question. Assuming the term " reasonable judgment and care " to be used in the sense in which it is ordinarily employed in defining the duties of masters in the original selection and subsequent inspection and repair of implements furnished to their servants, it is evident that the instruction in question was to the effect that a master might also be held to the same standard of duty with respect to the adoption of a particular mechanical contrivance in use elsewhere as a precautionary signal. I do not think the master's liability is correctly embodied in this proposition, or that it may properly be left in this form to the jury. However derelict in a moral sense an employer may be for his failure to guard his workmen by procuring such mechanical appliances as tend to diminish the dangers of their em-

ployment, the legal rights of the parties are altogether the creature of the contract that the law, from the relation of master and servant or on grounds of public policy, implies to exist between them. *Farwell* v. *B. & W. Railway Co.*, 4 *Metc.* 49 ; *Harrison* v. *Central Railroad Co.*, 2 *Vroom* 293.

It is not within the scope of this memorandum to inquire whether, by the contract of hiring, the master undertakes to better his service by the addition of such appliances as may tend to enhance the safety of his servants while at work, or to lay down any rule with respect to the proof upon which such a liability may be submitted as a question of fact to the jury. It suffices to say that if such an implied undertaking on the part of the master be assumed to exist, his liability arises only when it is shown that the efficiency of the contrivance in question has been established by actual use under circumstances of such notoriety that it is negligence for him not to recognize it as within the purview of his implied undertaking. *Smith* v. *New York and Harlem Railroad Co.*, 19 *N. Y.* 127 ; *Patt. Ry. L.* 302.

To submit to a jury the defendant's liability to adopt new contrivances as one of ordinary care or reasonable judgment seems to me to be, under any view of the law, an injurious error. A verdict found in accordance with this instruction would rest upon the proposition that the defendant corporation owed to the plaintiff, its servant, the legal duty of adopting the given contrivance if, in the opinion of the jury, the exercise of reasonable care dictated such a course. I am unable to find any warrant for such a doctrine as part of the law of master and servant. On the contrary, the law is that a master may carry on a business that is dangerous either in itself or in the manner of conducting it without being liable to one of his servants who is capable of contracting for himself and who knows the danger attending the business in the manner in which it is conducted. *Priestly* v. *Fowler*, 3 *Mees. & W.* 1 ; *Ladd* v. *New Bedford Railroad Co.*, 119 *Mass.* 412; *Hayden* v. *Smithville Manufacturing Co.*, 29 *Conn.* 548;

*Marsh* v. *Chickering*, 101 *N. Y.* 396; *Harrison* v. *Central Railroad Co.*, 2 *Vroom* 293.

The case of *Wallace* v. *Central Vermont Railroad Company*, decided in the New York Court of Appeals in 1893, and cited in the argument before us, was based upon a statute of that state requiring railroad companies to erect " tell-tales " in advance of dangerous overhead structures. It is therefore valueless as an authority.

Much as it is to be deprecated upon moral grounds that trainmen are tempted to expose themselves to the dangers of these low bridges unaided by automatic warnings, the law is that they may contract to do so, and that having done so they cannot, in the absence of express agreement, hold their employer to any duty that is not, in contemplation of law, inherent in the relation of master and servant.