JOHN FITZGERALD, as Administrator, etc., of THOMAS FITZGERALD, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Contributory negligence — when a question for the jury — rules of a railroad corporation as to speed on down grades — failure to provide signals at bridges — damages not excessive.*

Upon the trial of an action brought by an administrator to recover damages resulting from the death of his intestate, caused as alleged by the negligence of a railroad company, it appeared that the accident occurred at a low bridge and that the company had failed to provide the warning signals indicating the presence of such a bridge as required by section 2 of chapter 439 of the Laws of 1884. It also appeared that the train was descending a grade at a rate of

about twenty miles an hour; that there was a rule of the company that in descending grades conductors should see that their men were at their posts, and not allow their trains to acquire a greater speed than one mile in four minutes.

The conductor, a witness for the defendant, testified that the deceased, a brakeman, knew that the bridge was low and that there were no warning signals at the bridge. There was also evidence to show that the deceased had been in the cab of the engine and that the fireman had told him that it was not necessary for him to go on top of the cars.

*Held*, that the case was a proper one for the jury;

That if the deceased knew the location of the bridge and that it was a low one, but by reason of being occupied at the time in the discharge of his duties, did not notice his approach to it, he would not necessarily be charged with contributory negligence;

That evidence offered by the defendant, to the effect that the rule as to the speed permitted in descending grades, and its requirement that men should be at their posts, applied only to the grades at Schenectady and West Albany, did not militate against the right of the deceased to believe that the rule applied to all grades upon the road.

It appeared that the next of kin of the deceased was his father, fifty-eight years old, with whom he lived; that the deceased was single, twenty-two years of age and earned one dollar and eighty-five cents per day.

*Held*, that a verdict of $3,000 was not excessive.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 14th day of July, 1894, upon the verdict of a jury for $3,000 rendered after a trial at the Herkimer Circuit, and also from an order entered in said clerk's office on the 5th day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover the damages resulting from the death of the plaintiff's intestate, caused by the alleged negligence of the defendant.

There was some evidence in the case that the deceased was told not to go on top of the cars, which is thus stated in the charge of the justice who tried the case :

" It was the duty of the conductor and engineman to see that the brakemen were on top of the train ; were at their posts ; and to see to it that the train was held back and not allowed to run over fifteen miles an hour. It was going down grade and this man left the engine and went on top of the cars. What did he go there for?

He is not here to tell us, and we don't know what was in his mind except so far as the evidence shows the conversation and acts at the time. The question is whether it was in the line of his duty, under the circumstances, to go there, or whether it was, as claimed by the defendant, that he had no business to go up there; that his duty did not call him there and he ought to have kept away from the place. Two things are suggested for which he might have gone there; one is that he might have been there to help stop this train from going too fast down grade, and that, so far as the evidence shows what this man said, seems to have been the idea in his mind. Because the fireman testifies substantially that just east of Green's Corners, before they arrived at that place, Fitzgerald said : ' We are going down grade here, are we not ? ' and the fireman said, ' Yes ; ' and then the fireman says that he, deceased, began to stir himself as though he was going to get down from the seat; that he did get down and went out at the back part of the engine, stopped there for a moment and then went up on the car. The defense say that he was under no obligation; that it was not his duty to go up there unless the engineer told him to go there, and that the fireman told him it was not necessary for him to go there ; and that the fireman told him in the presence of the engineer. The fireman says that he said something of that kind to him, and he used the language which I will not repeat here, before he left the seat. That he made no reply. That he got down from his seat and went out, and the fireman says that he started to go over the tender, and that he spoke to him again, and, as he started to climb up on the car, he spoke to him a third time. . To neither of these remarks did the deceased make any reply. Did he hear him ? Did he understand that he was being notified by the fireman in the presence of the engineer that he did not need his assistance down that grade ? These are questions which you may well consider. Perhaps I need not go further with reference to this suggestion of contributory negligence. You have a right to take into consideration not only what it is claimed the fireman said to him ; whether he understood what the fireman said ; but also you have a right to take into consideration the rules and regulations of the company, as to whether he understood and had a right to understand from the language of the rules that it was his duty, considering the fact that they were going down grade, and

considering the rapidity with which the train was going, as you may find; at any rate that you may find; whether he regarded it as his duty under the rules; whether the fireman spoke to him in that way or not; to go on the train to help slow down the train. There is the other suggestion as to what he went up there for; that he went to see whether the train was all together; and they reply to that that it was not necessary for him to go up there to stand there and see that; but that he might go up and raising his head two or three feet above the top of the car he could have seen the condition of the train."

*C. D. Prescott*, for the appellant.

*Hadley Jones*, for the respondent.

MERWIN, J.:

The plaintiff's intestate, Thomas Fitzgerald, was on November 11, 1887, in the employ of the defendant as a brakeman on a freight train that left De Witt early in the morning passing eastwardly. The claim of the plaintiff is that as the train passed under a low bridge, between Green's Corners and Rome, the decedent, who was then on the top of one of the freight cars, was hit by the bridge and killed. It was between five and six o'clock in the morning, not fully light, and at that place there is a down grade, and there is evidence that the train was then going at the rate of about twenty miles an hour. It is claimed the defendant was negligent in not having at the bridge suitable warning signals as required by section 2 of chapter 439 of the Laws of 1884, which was then in force. It was shown that the defendant in this regard had failed to perform its duty, and it was a question of fact whether the decedent met his death at the bridge by reason of such failure.

Upon a former appeal in this case (59 Hun, 225) it was held that the decedent was chargeable with contributory negligence, it then appearing from the testimony of one of plaintiff's own witnesses that the decedent knew of the dangerous character of the bridge and that there were there no warning signals. The witness who gave this testimony was not called by the plaintiff upon the trial now under review, but was called by the defendant and gave substantially the same testimony as he gave before. He was the

conductor on the train.   It was held by the trial judge, correctly
we think, that the credibility of the witness was for the jury and
that it should not be said, as matter of law from his testimony, that
the decedent knew of the danger and the lack of signals.   If he
knew the location of the bridge and that it was low, and still, by
reason of being occupied at the time with the discharge of his
duties, he did not take notice of its near approach, he would not
necessarily be charged with contributory negligence within the rule
laid down in *Wallace* v. *C. V. R. R. Co.* (138 N. Y. 302).

As the case now stands we think that it should not be said, as
matter of law, that the decedent took the risk of the dangerous
bridge or was guilty of contributory negligence.   There was evi-
dence that he had passed over the road but once before.   The train
was a long one on a down grade going at a rapid rate for a freight
train.   He was told by the fireman that it was not necessary for
him to go on top of the train, but, in the absence of any direction
from the conductor or engineer, he had the right to infer, as the
jury may have thought, from the rules of the company, that it was
his duty to be on top.   There is evidence that this was to some
extent for him to determine according to his own judgment, in view
of the situation as it then was.   Whether in this respect, in view
of all the circumstances, he exercised reasonable care was for the
jury to say.

Our attention is called to some rulings upon evidence, but we find
no reversible error.   It was proper to show the situation at the time
at the bridge as to signals.   Whether there was any reason or neces-
sity for the decedent going on to the top of the car was for the jury
to say upon all the facts.

. The defendant claims that the court in its charge gave undue
force to a rule of the defendant that provides that " in descending
grades the conductors will see that their men are at their posts, and
not allow their trains to acquire a greater speed than 1 mile in 4
minutes.   Conductors and engine men must not violate this rule
under any circumstances."   One of the witnesses of the defendant
testified that this applied only to the West Albany and Schenectady
grades.   The rule contained no such limitation, and for aught that
appears the decedent had the right to believe that it applied just as
generally as it read.

The defendant claims that the amount of the verdict is excessive. The decedent was about twenty-two years old, was unmarried and lived with his father, the plaintiff, who was fifty-eight years old. He was receiving wages at the rate of one dollar and eighty-five cents per day, and had worked steadily from the time he was sixteen. His father was the next of kin. The amount of the verdict was largely in the discretion of the jury (Code, § 1904), and it should not, we think, be disturbed. (See *Johnson* v. *Long Island R. R. Co.*, 80 Hun, 306, and cases cited.)

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed, with costs.