FRANCESCO GALASSO and PASQUALE DI PIETRO, as Administrators, etc., of PIETRO MACCEO, Deceased, Appellants, *v.* THE NATIONAL STEAMSHIP COMPANY, Respondent.

*Negligence — injury to an employee from the dumping of a bucket with a defective catch which collided with another bucket.*

In an action brought by an employee to recover damages from his master because of an injury occasioned by the dumping of a "self-locking" bucket used in discharging a ship's cargo, which in rising out of the hold of the vessel came in contact with another bucket, it appeared that the tongue of the catch which locked the bucket, by the lifting of which only it could be dumped, was worn and consumed, and that the rivets which held it to the bucket were loose, so that the tongue itself was loose and shaky.

*Held,* that the question as to the master's liability should have been submitted to the jury, as it was a question of fact whether the bucket would have dumped by reason of the collision alone, had it been in good repair.

APPEAL by the plaintiffs, Francesco Galasso and Pasquale Di Pietro, as administrators, etc., of Pietro Macceo, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of January, 1897, upon the verdict of a jury rendered by direction of the court.

The action was brought to recover damages resulting from the death of the plaintiffs' intestate caused by the alleged negligence of the defendant.

*George P. Gordel,* for the appellants.

*John Notman,* for the respondent.

BARRETT, J. :

The plaintiffs' intestate, Pietro Macceo, was killed in the month of November, 1895, while working on board the *Europe,* one of the defendant's steamers. The *Europe* was at a wharf in the North river, discharging her cargo. Part of it consisted of chalk, which was being unloaded into a lighter alongside of the *Europe.* It was lifted out of the hold in buckets, raised by a rope which was attached to a derrick and operated by a steam winch on deck. Macceo was in the hold, loading buckets and starting them upward, when one of them, which had nearly reached the deck, dumped its contents, and a piece of chalk struck and killed him.

The negligence alleged was in allowing this bucket to become out of repair and dangerous, and continuing it in use while in this condition. It was what is known as a "self-locking" bucket, that is, one which, when dumped and empty, would lock itself by means of a catch in the side. This catch was composed of a piece of metal, called a tongue or hammer, which slipped over and fitted upon another piece underneath it. The catch was released by lifting up the tongue. The downward pressure of the load within then caused the entire bucket to swing on a pivot, inverting it and emptying its contents, when it would swing back and lock itself. There was abundant evidence to show that the bucket in question was old and out of repair; that the tongue was worn and consumed; and that the rivets which held it to the bucket were loose, so that the tongue itself was loose and shaky. The contention that there was not sufficient evidence to go to the jury on these points is so manifestly untenable that we shall not consider it in detail. There was also ample evidence to charge the defendant with notice of these defects, both by reason of lapse of time, and express notice to one Lack, who was the defendant's vice-principal for the purposes of repairs.

The principal contention made by the defendant is that, conceding the bucket to have been out of repair, this fact in no way caused or contributed to the accident; that the accident was occasioned solely by a collision with an empty bucket which was at the moment being lowered into the hold. That there was such a collision and

that the full bucket at once dumped is established by uncontradicted testimony. But this was not enough. It was necessary for the defendant to show that the bucket would have dumped had it been in good repair. If this is not shown, or if the proof is such that reasonable minds may draw different inferences from it, the dismissal was improper. It seems to us that the question was plainly for the jury.

The bucket could be dumped but in one way, by lifting the tongue up and off of the piece of metal beneath. It does not seem that the mere jar occasioned by contact with some other object, unless a very severe one, would effect that result if the catch were new and the tongue fitted solidly upon the piece beneath. On the other hand, if the tongue were loose and shaky, it seems plain that it would be easier to dislodge it, and that this might be done by a mere jar. The testimony of the manufacturer, Focht, supports this view. He says that the bucket could only be dumped by lifting the tongue, and that a lateral blow would not do this. "It could not be raised by striking it sideways. * * * Q. If the other bucket struck it below, would it raise the latch? A. That would raise it; yes." The defendant's witnesses do not pretend that they actually saw the empty bucket hit the tongue and force it up. They merely saw the collision and its result. That the empty bucket hit and forced up this small piece of metal is purely matter of inference; and there are facts tending to show that this did not, in truth, happen. The defendant's witness, Finnel, one of the only two witnesses called who saw the accident, says that the empty tub was half of its own height above the full one. In this he contradicts Corbett, the other witness; but the jury might well have credited his testimony. If it was correct, the empty tub could not have struck the other an upward, glancing blow, such as the evidence shows was necessary to release the catch in the ordinary manner. In fact, as the tubs tapered toward the bottom, there is some doubt whether the catch could have been struck at all.

It may be said, as the result of the evidence, that the jury might have found that the bucket dumped from the mere jar of contact, because the tongue was worn and loose. Focht's testimony that it was necessary that the tongues should be somewhat smooth and rounded in order to latch and unlatch by no means meets the plain-

tiffs' testimony. They might be smooth and rounded without being worn and loose. If the jury took this view of the accident, it was, at the most, caused by the joint negligence of the defendant and the decedent's co-servants. On settled principles the defendant is liable in such a case.

The contention that the defendant fulfilled its full duty in instructing one of its servants, Lamb, to make all necessary repairs, is clearly untenable. It could not delegate its duty to keep its apparatus safe. (*Fuller* v. *Jewett*, 80 N. Y. 46.) The case of *Schulz* v. *Rohe* (149 N. Y. 132) established nothing to the contrary. There the foreman, whose duty it was to keep the appliances safe, instructed the engineer to repair a certain machine. It was held that the latter's failure to do so was the negligence of a co-servant, and the cause of the accident. The decision was evidently placed upon the ground that the foreman was not negligent, but fulfilled his whole duty in giving proper instructions to the engineer. Of course, if the foreman was not negligent in fact, the defendant was not by imputation. The court did not, it is needless to say, depart from the fundamental rule preventing the master from delegating the performance of those duties which he owes directly to the servant.

The contention that the defendant fulfilled its whole duty by supplying a sufficient number of sound buckets, and that it is not responsible for the continuance of this one in use, is answered by the state of the proof. There was evidence that the defendant owned only twelve buckets altogether, and that they were all in use the day of the accident. The defendant's superintendent testifies to the number, and that they were all in use is quite satisfactorily shown.

The judgment should be reversed and a new trial ordered, with costs to the plaintiffs to abide the event.

VAN BRUNT, P. J., RUMSEY, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.