(43 App. Div. 46.)

### MEEHAN v. JUDSON et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. PERSONAL INJURIES—ACTION—NONSUIT.

In an action to recover for personal injuries, it is error to order a nonsuit when there is testimony of several witnesses showing the existence prior to the accident of a defect in an appliance used, which might have caused the injury, although there is no direct evidence as to what caused it.

2. MASTER AND SERVANT—APPLIANCES—CONTRIBUTORY NEGLIGENCE.

An employé has a right to assume that an appliance furnished by the master is in proper repair, and in a reasonably safe condition for the performance of the work for which it is intended; and where he had been employed therewith but a short time, and knew that it had been used by others, the question of contributory negligence is for the jury.

McLennan, J., dissenting.

Appeal from special term, Onondaga county.

Action by James J. Meehan against Edward B. Judson, Jr., and another. Judgment for defendants, and plaintiff appeals. Reversed.

In 1896 the respondents were operating the Syracuse Street Railway, and the appellant was a laborer in their employ. During his service he was injured in a barn in Wolf street, in the city of Syracuse, while engaged in operating a device used in removing motors from the electric car, and returning them to their places when cleaned. This machine comprised a jack, which was stationed on a truck. The truck was run along a track in a pit which was under the main track, which was about 4 feet 3 inches in depth. The track in the pit on which the truck ran was 2 feet 10 inches in width. Upon the truck was a framework of timbers, to which were attached a cylinder and a jack, which were used for raising and lowering these car motors. The jack was bolted to the truck at the bottom, and clips held it in its place, the bolts passing through them. The jack consisted of a cylinder through which a piston rod ran, and this was forced up by hydraulic pressure; the force being applied by a lever, which was worked by hand like a pump handle, and which was about 11 inches from the ground. The piston rod was about 2 inches in diameter,

and 22½ inches full length. At the top of the framework, the cylinder passed through two strips of iron, encompassed by a band or collar. On the top of the piston rod was a plate about a foot square. In raising a motor a block of wood is placed on the plate. This is forced up by the pump until the top of the block is flush against the motor. The motor is then detached from the car, and side blocks are placed upon the frame of the jack, and the jack pumped down until the motor rests upon these blocks. The large block is then taken out, the jack forced up by the pump until the motor rests upon the plate, the sideblocks are removed, and the motor is lowered by the pump until it is upon the framework. A reversal of this method raises the motor. Further facts appear in the opinion.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

James Devine, for appellant.
W. A. McKenzie, Jr., for respondents.

SPRING, J. The appellant had been in the employ of the respondents since the fall of 1895. He had been taking care of the steam pump, and had done no work in connection with the operation of the jack until two days prior to the 2d of June, 1896, when he was injured. During these two days he was engaged in working the lever to hoist and lower the motors. Four motors had been lowered and cleaned in these two days, and that comprised the sum of appellant's experience in that business. He had never heard any complaint of a defect in the jack, and did not know it was out of gear. On the day of the accident the motor had been lowered and cleaned. The appellant was stooping over, pumping, while Creighton, a co-employé, who had been at work for respondents for 2½ years, was steadying the motor, which was up sufficiently so that the square block had been placed under it. Without any warning, the motor slipped off the block, striking the appellant's leg, and injuring it so severely that amputation of the foot was necessary. No direct evidence was given on the trial tending to show what caused the motor to slip. Creighton, who was sworn on behalf of the appellant, although evidently in sympathy with the respondents, was unable to account for the accident. The nonsuit was granted for the reason that the testimony, as viewed by the trial judge, failed to show any specific cause for the falling off of the motor, and no connection was established between it and the defect shown to have existed in the jack. The proof showed there was considerable play of the cylinder inside the collar. The witness Shields testified the play was nearly an inch, and, when the piston rod was out, it deflected from the perpendicular four or five inches at the top of the motor. This deviation was towards the north, and the tracks also descended towards the north one foot in six; and the appellant, in pumping with the lever, was also at the north of the track. Shields testified this wabbling condition of the cylinder had existed for the entire year prior to the accident, and during which period he was employed at intervals in connection with this jack. He further stated that the sagging of the motor rendered the operation of pumping dangerous; that there were no spikes nor wedges to fasten the cylinder to the collar, and that gave the unrestricted

play he described; that this defective condition he observed down to within two weeks of the time of the accident. Shields spoke to Mr. Howard, the superintendent of respondents, several times as to the defective condition of this jack, and informed him that it was dangerous to use. Sometimes the difficulty was that the bolts at the bottom of the jack were loose, and they were readily and each time tightened with a wrench. Again, the complaint was the lever was too short, and, again, the defect pointed out was the inclination of the piston rod; and these defects were not remedied. Motors had fallen off on three or four occasions before the injuries to the plaintiff. Shields is corroborated by three other witnesses. Bonny, who worked on the jack for six months, off and on, noted the play of the cylinder in the collar; that the deviation of the motor from a plumb line was four or five inches; that it was always in that condition; that it fell off once with him when the superintendent was present, and he called his attention to it, advising him it was dangerous; and that the motor was always leaning to one side. Bonny ceased working for respondents in May, before the accident, and he knew nothing of the motor after his employment ended. Cowan testified that he noticed the sagging of the jack up to the time he quit working on it, which was about two weeks before the accident; that he spoke to the foreman, Howard, in regard to it; that the last conversation with him was about six weeks before the injuries to the plaintiff; that the witness was then putting up the motor, and he called the attention of the superintendent to the sagging, and stated he apprehended it would fall off; that it then deflected four or five inches; and Howard jumped down in the pit, looked at it, and said he thought it was all right, and to go ahead and put the motor in. He further testified that this sagging continued uninterruptedly all the time he was working on the jack; that the deflection was four or five inches at the top of the motor; and that there were no spikes or anything inside the collar to hold it in place. The witness Barnes worked on the jack from the middle of January, 1896, until the evening of May 29th,—four days before appellant was injured. The sagging condition of the motor continued until that time. We have, therefore, the proof by four witnesses that this jack failed to perform its office properly; that it sagged towards the north four or five inches, with the motor, weighing from fourteen to fifteen hundred pounds, on the top of this wooden block, which was smaller than the superimposed motor. In support of the statement that the trend of this inclination was towards the north is the fact that the descent of the tracks was in that direction one foot in six. No other cause appears for the sliding off of the motor than this deflected condition.

We think the judge was in error in nonsuiting the appellant on the ground that the evidence failed to show that the motor sagged at this particular juncture. With the proof establishing that was its condition almost daily, and that no other efficient reason is suggested for the accident, it was for the jury to pass upon that question. This would not be permitting the jury to speculate upon what caused the accident, for there were facts which fairly jus-

tified the deduction that the accident was due to the sloping of the piston rod and the motor. The burden is incumbent upon the plaintiff always to establish that his injuries arc due to some specific negligence of the defendant. That negligence, however, may not in every instance be susceptible of direct proof by an eyewitness; but, if the facts proved warrant the inference that the injuries are attributable to the failure of the defendant to perform his precise duty, then it is the province of the jury to decide whether or not the defendant is chargeable with negligence. Chisholm v. State, 141 N. Y. 246, 36 N. E. 184; Fitzgerald v. Railroad Co., 37 App. Div. 127, 55 N. Y. Supp. 1124; Hart v. Bridge Co., 80 N. Y. 622.

It is contended that the case falls within the class where the risk is an obvious one to the employé. The business was not of itself hazardous. ·If the piston rod remained erect, there was very little danger of the motor falling off. If the machinery was in proper condition, then the risk was the plaintiff's. It is elementary, however, that the fact that he assumed the risk incidental to the business is upon the hypothesis that the master performed his duty by providing an adequate appliance and reasonably safe machinery. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Knisley v. Pratt, 148 N. Y. 372–378, 42 N. E. 986. The doctrine of obvious risks has never included the danger resulting from inadequate machinery and appliances, where the defects were known to the master, and he failed to remedy them. The duty of the master to exercise reasonable care, both by furnishing suitable machinery and keeping it in repair, is one always in force. Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918; Galasso v. Steamship Co., 27 App. Div. 169, 50 N. Y. Supp. 417; Rima v. Iron Works, 120 N. Y. 433, 24 N. E. 940. Of course, Howard, the superintendent, in the performance of this obligation was the alter ego of the defendants. Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466; Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407.

We cannot· say, as matter of law, that the plaintiff should have discovered that the motor tipped forward. He was inexperienced in the use of the jack. His· work took him to the bottom of the pit, and he was bending over, working the lever, as directed by the employer. He had a right primarily to assume that the appliance was in proper repair and in a reasonably safe condition. While an inspection might have apprised him of its condition, yet the short time of his employment upon it, the fact that it had been long in use, as he knew by casual observation, and his position in the prosecution of his work, are circumstances which made it proper for the jury to decide whether he exercised care commensurate with the situation in which he was ·placed.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, J., dissenting.