173 N. Y. 524, 66 N. E. 407. The reasons which made it proper to place the cashier in the exempt class, and permit the county clerk to make his own selection of the person to whom he desired to intrust the handling of the money for which he and his sureties are responsible, are equally cogent for permitting him to retain the person so selected by him for that important duty.

The final order should be affirmed, with costs. All concur; WILLIAMS, J., in result only.

---

### HARRISON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. MASTER AND SERVANT—LIABILITY OF MASTER FOR INJURIES TO SERVANT—RIGHT OF BRAKEMAN TO RELY ON TELLTALES.

Where telltales are placed at some distance from a bridge over a railway to warn brakemen on the running board of the danger ahead, a brakeman is not required to realize the exact location of the bridge, even though he knows it is between certain stations; but he is justified in relying to some extent upon the telltales to warn him of the nearness of the bridge.

2. SAME—QUESTIONS FOR JURY—VIGILANCE OF SERVANT.

Where a brakeman was killed by being struck by a low bridge over a railway, and some of the strands of a telltale were missing or tangled, whether he exercised sufficient vigilance, in view of the circumstances, held, under the evidence, for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1089–1132.]

3. SAME—EVIDENCE — SUFFICIENCY — NEGLIGENCE OF DEFENDANT — DEFECTIVE TELLTALE.

In an action for the death of a brakeman, killed by a low bridge over a railroad, evidence held to authorize a finding of defendant's negligence, because of a defective telltale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–972.]

4. SAME—FACT OF COLLISION WITH BRIDGE.

In an action for the death of a brakeman from a collision with a low bridge over a railway, evidence held to authorize a finding that decedent collided with the bridge.

Robson, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Margaret Harrison, administratrix of the estate of one Kirby, against the New York Central & Hudson River Railroad Company. From a judgment of nonsuit, after setting aside a verdict for plaintiff, defendant appeals. Reversed, and judgment ordered on the verdict.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

F. J. Cregg, for appellant.
Leroy B. Williams, for respondent.

SPRING, J. The claim of the plaintiff is that Kirby, the intestate, was hit by a low steel-girder bridge a short distance west of Knowlesville, a station on defendant's road, and the negligence charged is the omission to keep the telltales in condition to warn the intestate of the proximity of the bridge.

Kirby had been in the employ of the defendant as a brakeman about 4 months at the time of the accident, and had been under this bridge 15 times before he was killed. The freight train on which he was employed left Suspension Bridge about 11 o'clock in the forenoon, reaching Medina about 1:30 in the afternoon. He was last seen at this station, climbing on the top of one of the cars composing the train. Knowlesville is about 4 miles east from Medina, and the bridge mentioned about 1,000 feet west of the former station, and the tell-tales about 150 feet west of the bridge. Kirby's body was found, shortly after the train had passed, about 40 feet east of the bridge. No one saw the accident, and the proof of the charge that he came in contact with the bridge depends upon circumstances and inferences. When the body was found there was a deep broad cavity or bruise in the back and side of his head, as if it had been crushed by contact with some heavy, solid object. The witness who found the body examined the lower westerly steel beam of the bridge over the center of the track, and on its lowest side discovered a spot, half-moon shape, where the dust and soot had been knocked off, and the impression was quite definite that something had recently come against the bridge at this point.

There was also considerable proof, extending back from two weeks to a month, as to the condition of these telltales. This warning signal consisted of six or eight strands of rope, from four to six inches apart, and the evidence is that two or three of those originally in the center had become worn out or tangled up, so that there was a clear space of from one to two feet, and ample to permit the passage of Kirby's head and shoulders without striking any of the remaining strands. The mark on the girder was in line with the center of this signal, and Kirby's head, if he were standing on the running board, would have also been in line with this spot. From a mile or two west of Knowlesville to the station there is a downgrade, and the engineer of this train shut off the steam at this descent, causing the smoke to roll back over the train. The proof shows that on a clear, still day, as this was, the smoke settles down, obstructing the view of a brakeman standing where Kirby may be said to have been stationed in the performance of his duties. There is a rule of the defendant, then in force, regulating the conduct of brakemen, which in part is as follows:

"They [the brakemen] must ride upon the top of the cars and in such position as to readily pass signals the whole length of the train; but in extremely cold or stormy weather the conductor may permit them to relieve one another regularly, provided there is always one brakeman on top of the cars when the train is in motion."

When Kirby was climbing on top of one of the cars at Medina, he was acting in obedience to this rule. His position was on the running board of one of these cars, and he was going up on the fifth or sixth one from the engine. In order "to readily pass signals the whole length of the train," he must keep in view the cars at the rear of him, as well as those in front. The presumption is supported by the facts that at the time of the accident he was fulfilling his duty.

He had been under this bridge 15 times before the day he was killed. He knew the bridge was there. He was not required, however to realize its exact location. He was justified, to some extent, at least, in relying upon the telltales to warn him of the nearness of the low-bridge. Wallace v. Central Vermont R. R. Co., 138 N. Y. 306, 33 N. E. 1069.

The telltales were placed there, pursuant to a statute (Laws 1884, p. 516, c. 439, § 2), for the purpose of warning brakemen on the running board of the danger ahead. We cannot say, as matter of law, that Kirby was guilty of negligence. There was room. for him to pass through the open space caused by the missing strands. He had duties to perform which would engross his attention, and the smoke would in some measure obscure his vision. It was for the jury to determine whether he was sufficiently vigilant, in the light of all the circumstances and inferences presented to them.

There was also ample evidence of defendant's negligence. The telltales, with several strands gone, are a snare, instead of a protection, to the brakeman on the running board. If in condition, so that a man on top of the car comes in contact with them, he has distinct warning of the nearness of the bridge. He knows that this judicious provision by the defendant is in order that he may be apprised of the proximity of the bridge, and naturally he relies upon it. If the defendant allows this signal to become defective, so that it fails to give the warning intended, it is far worse than if none was there at all; for in that event the brakeman would be expected to be alert, and have the location of the bridge fixed in his mind as a danger and menace to be anticipated and guarded against, instead of depending upon telltales, which he has a right to assume are in proper condition.

The evidence was sufficient to permit the jury to find that the intestate collided with the bridge. Fitzgerald v. N. Y. C. & H. R. R. R. Co., 37 App. Div. 132, 55 N. Y. Supp. 1124.

The judgment should be reversed, with costs of this appeal, and the verdict reinstated, with costs to the plaintiff. So ordered. All concur, except ROBSON, J., who dissents.