## YOUNG v. UNITED STATES MORTGAGE & TRUST CO.

(Supreme Court, Trial Term, New York County.   October 2, 1911.)

1. BANKS AND BANKING (§ 314*)—OFFICERS—COMPENSATION—EVIDENCE—JURY QUESTION.

In an action by the president of a mortgage and trust company for a percentage of the profits, claimed to be due him as compensation, evidence *held* to permit the drawing of different inferences, and hence to present a question for the jury.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 314.*]

2. NEW TRIAL (§ 72*)—GROUNDS—VERDICT AGAINST WEIGHT OF EVIDENCE.

Where the undisputed evidence permits of various inferences, thus making a case for the jury, a verdict may be set aside by the trial court as against the weight of the evidence.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 146–148; Dec. Dig. § 72.*]

3. BANKS AND BANKING (§ 314*)—OFFICERS—ACTIONS FOR COMPENSATION—EVIDENCE—WEIGHT OF EVIDENCE.

In an action by the president of a mortgage and trust company to recover a percentage of the profits, claimed to be due him as compensation, *held*, that a verdict for plaintiff was against the weight of the evidence and would be set aside.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 314.*]

Action by George W. Young against the United States Mortgage & Trust Company.   On motion by defendant upon the trial judge's minutes to set aside the verdict and obtain a new trial.   Motion granted.

Theall & Beam (Austen G. Fox, of counsel), for plaintiff.
Bowers & Sands (John M. Bowers, of counsel), for defendant.

GIEGERICH, J.   The action was brought to recover a sum equal to 5 per cent. of the net profits of the defendant company from January 1, 1902, to March 30, 1905, which the plaintiff claims the defendant agreed to pay him, in addition to a fixed salary, in consideration of the continuation of his services as its president.

[1] On June 22, 1899, the plaintiff was receiving a salary of $25,000 per year.   He claims that on that date he had an interview with one Richard A. McCurdy, who was then a director of the defendant company and a member of its executive committee, and also the president of the Mutual Life Insurance Company, which held a controlling interest in the defendant company; that such interview was held immediately preceding a meeting of the executive committee of the defendant; and that no one else was present.   The plaintiff's testimony as to this interview was uncontradicted and is as follows:

"I was in my office, and Mr. McCurdy sent out and asked me to come in and see him, and I went outside, and he was on the settee right outside of my office, and he sat down there, and he asked me to sit down, and I sat down, and he said: 'Mr. Young, I have had under consideration the suggestion you made that you would like to buy a thousand shares of the stock of the mortgage company, and I am very sorry that I cannot comply with that request. It would break the control of the Mutual Life; it would make them then in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the minority.' And he said: 'But I think I can arrange the matter equally as satisfactory to you under the English system.' * * * 'We want to make it worth your while to make this company your life work,' that is what he said to me, 'and give you a continued interest in it.' And then he reached over, there was a table right near there, and he took a pad off that table, and he took one of those pencils which he always carried in his pocket, a silver pencil with a blunt point, and he wrote on the pad '5 per cent.,' and held it right up in front of me, and said: 'How does that strike you?' 'Well,' I said, 'Mr. McCurdy, I think that is not only fair, but I think it is generous.' 'Well,' he said, 'that is what we have decided to do.' Those were his exact words to me, as closely as I can remember, and then we went almost immediately to the meeting of the executive committee—I am not sure my memory is correct that it was a Thursday; we always held our meetings on a Thursday—and at the meeting of the executive committee he stated the case to them. * * * Mr. McCurdy took out of his pocket at this meeting a resolution that I saw, it was in his own handwriting, evidently had been prepared before he came down there, and he presented this resolution, * * * and said: 'I have a resolution here that I would like to introduce, affecting the president.' * * * He stated the fact that he had had this conversation with me, that I wanted the stock, that he couldn't give it to me, and that, instead of that, he would recommend the treatment of the matter under the English system, and give Mr. Young 5 per cent., and the 5 per cent. was read in the original resolution as presented. * * * And Mr. McCurdy said: 'Well, now, there are other trust company presidents in this building interested, and they might feel that they should be treated as well as Mr. Young. Since it is understood between the committee and Mr. Young what he is to receive, we might leave that out'—and further stated that the offer of 5 per cent. was satisfactory to me in lieu of the stock."

Thereupon the executive committee passed a resolution as follows:

"Resolved, that the executive committee recommend to the board that they be authorized to award to the president, in compensation for his services and in addition to his regular salary, a participation in the net profits of the company during the pleasure of the board."

The same afternoon a meeting of the directors of the defendant company was held, at which meeting Mr. McCurdy and the plaintiff and others were present, and at which the following resolution was adopted:

"The recommendation of the executive committee, at their meeting held this day, regarding the award to the president for additional compensation for his services over and above his regular salary, is approved and adopted."

At a meeting of the stockholders of the defendant company, held on March 8, 1900, the above minutes of the acts of the executive committee and of the board of directors were read and approved. On January 19, 1900, the plaintiff was paid the sum of $19,270, which represented 5 per cent. of the profits of the company during the six months ending December 31, 1899. The bill or voucher which the plaintiff signed on receiving this payment was as follows:

"1900, January 19th.

"To payment as provided in resolution of the executive committee passed January 18, 1900, $19,270.

"$19,270.                                    January 19, 1900.

"Received from the United States Mortgage and Trust Company nineteen thousand two hundred and seventy dollars in full payment of the above account.                                    G. W. Young."

The resolution so referred to was passed at a regular meeting of the executive committee held on January 18, 1900, at which the plaintiff was present. The resolution is as follows:

"It was on motion unanimously resolved that, pursuant to the provisions of the resolution of the executive committee passed June 22, 1899, and approved by action of the board of directors on the same date, providing for the payment of an honorarium to the president consisting of a percentage of the net earnings of the company, the executive committee hereby authorizes the payment to the president of 5 per cent. of the net earnings of the company as determined for the six months ending December 31, 1899."

The minutes of this meeting of the executive committee were reported to the board of directors at a meeting held on the 8th day of March, 1900, and were approved by them, and on the same date, at a meeting of the stockholders, the minutes of both the executive committee and the board of directors were approved. No further payment was made nor demand made until the end of the year 1901, when the plaintiff received a further payment and gave a receipt in the following form:

"1901, December 31st.
"To payment pursuant to resolution executive committee passed December 26, 1901 (vide resolution board of directors January 18, 1900).

1900 ...............................................$461,622.08
1901 ............................................... 673,004.18

$1,134,626.26
at 5%      $56,731.30
Dec. 31, 1901.

"$56,731.30.

"Received from the United States Mortgage and Trust Company fifty-six thousand and seven hundred thirty-one and 30/100 dollars in full payment for the above account.                                    G. W. Young."

The resolution of the executive committee of December 26, 1901, so referred to, was as follows:

"Resolved, that pursuant to the provisions of the resolution of the executive committee passed June 22, 1899, and approved by action of the board of directors on the same date, providing for the payment of an honorarium to the president consisting of a percentage on the net earnings of the company, the executive committee hereby authorizes the payment of 5 per cent. on the net earnings of the company as determined since such payment was last made."

This resolution of the executive committee was likewise approved by the board of directors at a meeting held on the same date, and subsequently, on March 13, 1902, the stockholders gave a similar approval of the acts of the executive committee and the board of directors. The plaintiff joined in making semiannual reports to the banking department of the state, and also presented semiannual reports of the condition of the company to the board of directors, and in none of these reports was any mention ever made of this 5 per cent. claim of the plaintiff, except such payments as were made as above stated, and then only after they were made.

Although the facts in this case are undisputed, different inferences may be drawn, and where such is the situation a case is presented

which should be left to the jury for its determination. In Powell v. Powell, 71 N. Y. 71, 73, the court said:

"We think the conduct of the defendant, and the circumstances surrounding the transaction, were such that the jury could properly draw the inference that the defendant obtained the note with the preconceived design to destroy it, and not use it for the purpose for which plaintiff parted with it. It is the province of the jury, not only to pass upon conflicting evidence, but, when different inferences may be drawn from evidence or the conduct of parties, to draw the inferences."

In Hart v. Hudson River Bridge Co., 80 N. Y. 622, the rule was stated as follows:

"When, from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them; that is to say, when the process is to be had at a trial of ascertaining whether one fact had being from the existence of another fact, it is for the jury to go through with that process."

For recent applications of this rule, see Wilson v. New York Contracting Co., 129 App. Div. 125, 129, 113 N. Y. Supp. 349; Meehan v. Judson, 43 App. Div. 46, 59 N. Y. Supp. 578.

[2] It does not follow, however, that the verdict of the jury should be left undisturbed in such a case. As was said in Colt v. Sixth Ave. R. R. Co., 49 N. Y. 671, and quoted with approval in Fealey v. Bull, 163 N. Y. 397, 400, 57 N. E. 631:

"The evidence may be sufficient in law to sustain a verdict, although so greatly against the apparent weight of evidence as to justify the granting of a new trial."

In Luhrs v. Brooklyn Heights R. R. Co., 11 App. Div. 173, 174, 42 N. Y. Supp. 606, the rule was stated by Judge Cullen as follows:

"A verdict against evidence is a verdict without evidence to support it. Where such a verdict is rendered, the case presents a question of law, and the party aggrieved has an absolute right to have it set aside. The question whether a verdict is against the weight of evidence is one the determination of which rests in the sound discretion of the court. When it is said that a verdict will be directed where a contrary verdict would be set aside, reference is made to the former class of cases, not to the latter class. Colt v. Sixth Avenue R. R. Co., 49 N. Y. 671."

[3] In this case I think the conclusion reached by the jury was against the weight of the evidence. The fact that the original resolution of the executive committee, passed immediately after Mr. McCurdy had reported to the committee his conversation with the plaintiff, provided, not for a 5 per cent. participation as long as the plaintiff might remain with the company, but simply a participation without naming an amount or percentage, and limited in duration to the pleasure of the board, and the fact that, when payments were made to the plaintiff on two occasions subsequently, they were made only after resolutions passed by the executive committee, at all of which meetings the plaintiff was present, and the fact that in the semiannual reports to the banking department of the state of the condition of the defendant company, in which reports the plaintiff joined, no mention was made among the liabilities of the defendant of any amount due to himself, all indicate so strongly that the true intention of the parties

was that a participation in the profits should not belong to the plaintiff unless and until it was voted to him that a finding by the jury to the contrary should be set aside.

In view of the conclusion above reached, it will be unnecessary to discuss the many questions as to the admissibility of the evidence which are so strongly argued in the two briefs presented on behalf of the defendant.

The motion to set aside the verdict and for a new trial is therefore granted.