REBECCA C. PIERCE, ADMINISTRATRIX OF THE ESTATE OF JOHN H. PIERCE, DECEASED, PLAINTIFF IN ERROR, v. THE CAMDEN, GLOUCESTER AND WOODBURY RAILWAY COMPANY, DEFENDANT IN ERROR.

The intestate, who had been in the employ of the defendant company for about one month as an extra conductor, and had only run a car for one day over that part of the road where the accident happened, and at the time of his entering the company's service had no knowledge of its road, the method of construction or the company's way of operating it, was collecting fares from the platform step running the car's length, and, reaching up for the registry rope to mark a fare, struck his head against a pole which was only six and one-half inches from the outside of the platform step, and was killed, the pole next to the one which caused the accident being ten inches from the step. *Held*, that it was for the jury to determine whether the intestate was guilty of contributory negligence, there being no direct evidence that he had any knowledge of the pole in question or of the danger and risks therefrom.

On error to the Supreme Court.

For the plaintiff in error, *John W. Wescott* and *Henry S. Scovel.*

For the defendant in error, *J. Willard Morgan* and *David J. Pancoast.*

The opinion of the court was delivered by

LUDLOW, J.    This suit was brought by the plaintiff, administratrix, under the statute, to recover damages for the death of her intestate, caused, as alleged, by negligence of

the defendant company.  On the trial there was a motion for nonsuit at the close of plaintiff's evidence, which was granted by the court and exception thereto sealed, and this writ of error is brought to review that judicial action.

The case shows that the intestate, Pierce, was hired August 13th, 1894, by the defendant company (defendant in error), for occasional service as an extra conductor, on the company's trolley road operated between Camden and Woodbury.  It was an ordinary trolley road, with double tracks, having its wires fastened to poles set on the outside of the tracks generally along its route, which is about seven or eight miles.

The intestate had formerly acted as a conductor for about eleven months on the Camden horse railroad, in the city of Camden.

It does not appear that, before or at the time he went into the defendant company's service, he had any knowledge as to its said road, its method of construction or of the company's way of operating it.  He was set to work occasionally, for the first two or three weeks, as conductor on the lower end of the route, a branch between Woodbury and Almonesson, the cars of which did not run this side of Woodbury.  He did not have steady employment; what work he had was, for the most part, on that lower branch, and it was not clearly proved that, prior to September 15th, 1894, he ran a car as conductor on the main route between Woodbury and Camden, except on one day, September 11th.

On the night of September 15th, 1894, about ten o'clock, he left Woodbury for Camden, in charge of an open car or trailer, having several passengers.

This sort of a car is open on both sides, its seats for passengers run crosswise the whole width of the car, and on each side projecting therefrom is a platform step, about seven and a half inches wide, running the car's length, which is for the use of passengers getting on and off, and particularly for the use of conductors for collecting and registering fares, the rope for registry of fares running along the upper part of the car within reach of this platform step.

On the night above mentioned, as this car left the limits of Woodbury, going at rapid speed, the conductor, Pierce, was moving along the platform step attending to his business, and as he was reaching up for the registry rope to mark a fare, his head came in contact with a pole standing close to the car, and he was knocked off and almost instantly killed.

A passenger who happened to be looking at the conductor at the moment, says that he saw him fall, and that the night was so dark that the pole could not be seen until at the very instant when it struck the conductor's head.

It was discovered that the pole by which the conductor was hit stood on the centre space between the double tracks, and was only six and a half inches away from the outside edge of that platform step where the conductor was at work; and that it was one of a few (five or six) poles which, for some reason, had been set, at that particular locality, just outside of Woodbury, in the country part of the road, on the centre space between the double tracks. These five or six poles were set about ninety to one hundred and twenty feet apart, covering a distance of a few hundred feet, and the next pole, north of the one which hit the conductor, was set ten (10) inches off from said outer edge of said platform step.

The plaintiff's case being rested, a nonsuit was directed by the learned justice who tried the cause, on the grounds on which the motion was based—

(1) That the intestate knew of the danger and risk that his position as conductor involved on that particular route, from the pole in question. As there was no direct evidence in the case proving any such knowledge on the part of the intestate, it was a matter of inference from the fact whether he had or had not such knowledge, which was for the jury to determine.

(2) That the intestate was negligent in being unnecessarily on that side of the car while passing the pole which caused his death. This depended on the intestate's knowledge of the danger, and was also, as the case stood, a matter solely for the jury. The car was going at rapid speed on a very dark night.

(3) That the danger from this pole was obvious and not latent, and was assumed by the contract of service. This was a question of fact under all the circumstances as shown in this case. Some of the five or six poles were set irregularly as to distance from passing cars. One was ten inches off, another six and one-half inches off, and all were from ninety to one hundred and twenty feet apart. One might be passed in safety and another not.

Such a dangerous irregularity in the planting of these poles might and might not be discoverable to persons in rapidly passing cars exercising ordinary, reasonable care and observation.

And while the intestate had on one occasion run a car on this part of the route and passed the poles in question, he may have been on the opposite side of the car at that moment, or he may have passed other of these poles at that place in safety, he may on that occasion have run a closed car and not an open car; but there was no direct evidence in the case before the court that the deceased ever had any knowledge of the pole in question or of the danger or risks therefrom, and whether or not he ought to have known of the danger from the pole by which he was hit, was a matter of inference from the facts and was for the jury. *New York, Susquehanna and Western Railroad Co.* v. *Marion*, 28 *Vroom* 94, is in some respects applicable to the matter before us.

Let the judgment of nonsuit be reversed and a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT, BROWN, SMITH.    11.