that it was not an important factor in influencing the mind of the learned trial justice to reach the conclusion he did.    We conclude, therefore, that justice requires the case to be retried.

Judgment reversed, and a new trial ordered, with costs to the appellants to abide the event.    All concur.

BENTHIN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

1. MASTER AND SERVANT—RAILROADS—NEGLIGENCE.

A railroad company permitted a telegraph pole to be set in such a place on its right of way, and at such an angle, that it came within four inches of the head of a fireman standing on the platform of his locomotive. There was sufficient room for the pole to have been set out a safe distance from the track. A fireman was struck by the pole and killed. *Held*, that defendant had not furnished a reasonably safe place for its employés to perform their duties, and hence was guilty of negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.

A journal on the right-hand side of a train became hot, and required and received frequent examinations by engineer and fireman. While the engineer was attending to his duties in the front of the engine, the fireman, with the sanction of the engineer, went over to the right side of engine, and, while looking at the journal to see if it was still hot, was struck by a projecting telegraph pole, and killed. By the rules of the company, the fireman was required to be stationed on the left side of the engine, and, when not firing, to be keeping a lookout ahead. *Held*, that, at the time deceased was killed, he was in the discharge of his duties, and that he was not guilty of contributory negligence, as a matter of law, by going to the right side of the engine, since the heated journal could not be observed from the left side.

Appeal from trial term, Orleans county.

Action by William Benthin, as administrator of August W. Benthin, against the New York Central & Hudson River Railroad Company, for death by wrongful act. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals.    Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles A. Pooley, for appellant.
S. E. Filkins, for respondent.

FOLLETT, J.    This action was begun November 20, 1895, to recover damages occasioned by the death of the plaintiff's intestate,— caused, it is alleged, by the negligence of the defendant.    From 1890 until July 6, 1895, the plaintiff's intestate had been employed as a fireman on defendant's freight trains running between Buffalo and Rochester.    At about 12 minutes past 2 o'clock in the morning of July 8, 1895, plaintiff's intestate, while firing on a freight train running east on track No. 1, was killed by the left side of his head coming in contact with a Western Telegraph pole standing 49 inches south (measured on the ground) of the south rail of track No. 1, and about one-fourth of a mile east of the Fairport station.    This pole

formed one of a line maintained by the Western Union Telegraph Company for many years along the defendant's right of way. Formerly, tracks Nos. 1 and 2 were further north of the pole in question; but, when the West Shore Railroad was leased by the defendant, it changed the location of tracks 1 and 2 so that the south rail of No. 1 was the distance above stated north of this pole. The platform of locomotive No. 727, on which plaintiff's intestate was employed, extended beyond the rails, so that, as the locomotive passed the pole, the south, or right-hand, side of it was from 16 to 22¾ inches north of the pole, assuming that the pole was perpendicular. But the evidence shows that the pole, instead of standing perpendicularly, leaned towards the north; and it is asserted by the plaintiff (and there is some evidence to sustain the assertion) that the pole, at a point as high above the ground as the intestate's head was when he was standing on the platform of the locomotive, was only about 4 inches distant from the south side of the locomotive. It is alleged in the complaint that the defendant was negligent in permitting this pole to stand within 49 inches of the south rail of its track, which negligence, it is alleged, was the cause of the death of the plaintiff's intestate. The evidence shows that the telegraph poles east and west of the pole in question were from 12 to 13 feet distant from the nearest rail, and that there was sufficient unoccupied land so that this pole might have been set 12 or 13 feet from the track. The pole formed no part of any structure belonging to the defendant's road, and necessary for its operation, and the question is not the same as presented by the nearness of bridges and like structures to passing cars. I think that the evidence was sufficient to authorize the jury to find that the defendant was negligent in permitting this pole to stand in the position in which it did; that the defendant did not, in this respect, exercise due care to furnish a reasonably safe place for its employés to perform their duties. I am also of the opinion that the evidence was sufficient to authorize the jury to find that the plaintiff's intestate did not by his own negligence contribute to the injury. The freight train in question consisted of about 30 or 35 freight cars, leaving East Buffalo July 7, 1895, at 9:40 p. m., and bound for Syracuse. Shortly after leaving Buffalo, a journal on the south or right-hand side of one of the freight cars became hot, and required and received frequent examination and attention by the engineer and fireman of the locomotive. Defendant's engineer was the only person who witnessed the accident, and he testified that the plaintiff's intestate, just before he was struck, looked out from the right-hand side of the locomotive cab, back towards the west (towards the rear of the train), to see if the journal was smoking, and he reported that it was not, and that he looked again, and, while looking, was struck by the pole. It is asserted by the defendant that plaintiff's intestate was not then engaged in the discharge of any duty imposed on him, and that, by the rules of the service, he was required to be stationed on the left-hand side of the locomotive, and, besides firing, to keep a sharp lookout ahead on that side, and that it was the duty of the engineer to look out on the right-hand side of the locomotive. These are the places assigned

by the rules to the engineer and fireman, but I am unable to assent to the argument of the defendant that the intestate was outside of his duties because, under the sanction of the engineer, he was exercising unusual care and attention for the safety of defendant's train. The engineer was employed in running the train and in looking ahead, and it was not negligence, as a matter of law, for the plaintiff's intestate to go to the engineer's side of the train, to see if the journal had again become heated. This fact could not be observed from the fireman's side of the train, because the heated journal was not on that side; and, more, at this point the defendant's tracks curved, and the fireman's side was on the outside of the curve, and the whole train could not be observed from his side. I think the evidence was sufficient to authorize the jury to find that the plaintiff's intestate was killed while in the discharge of his duty. It is urged that the intestate had passed this pole on many previous occasions. This is undoubtedly true. But whether he was negligent in not knowing how near to the track it stood, and bearing in mind the location of the pole and the train at the time he looked, was a question of fact for the jury. This pole was but one of many, the location of which could not be borne in mind by any employé. This pole was not like a bridge or a station house,—a structure,—the location of which could not well be forgotten. The engineer of this train testified that, though he had passed this pole many times before, he had never observed how close it stood to the track, while another engineer, called by the defendant, testified that he had observed its proximity to the track. Whether the night of the accident was so foggy and dark that objects could not be distinctly seen for any considerable distance, was a disputed fact. Under the rule laid down in Wallace v. Railroad Co., 136 N. Y. 302, 33 N. E. 1069, in Fitzgerald v. Railroad Co., 88 Hun, 359, 34 N. Y. Supp. 824, and in Ferren v. Railroad Co., 143 Mass. 197, 9 N. E. 608, the questions whether the defendant was negligent, and whether the plaintiff's intestate by his own negligence contributed to the accident, were for the jury, and its verdict should not be disturbed.

The judgment and order should be affirmed, with costs. All concur.