and no payment or tender of accrued costs is made; and where no further appearance is made by defendant the judgment will, on motion of plaintiff's attorney, be affirmed, with costs.

Appeal from municipal court, borough of the Bronx, Second district.

Action by Lillian B. Stilwell against Abner Armstrong. There was a judgment for plaintiff, and defendant appealed. Defendant moved for leave to withdraw the appeal, which was denied, and, there being no further opposition, the judgment was affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

P. A. McManus, for appellant.

Harry Overington (George F. Langbein, of counsel), for respondent.

MacLEAN, J. The plaintiff having recovered judgment, the defendant took and perfected an appeal therefrom, and had the cause placed upon the calendar of this court for the May term. Upon the call of the calendar, the defendant's counsel moved ore tenus for leave to withdraw the appeal on the ground that the parties had settled their differences. The motion was not entertained, because not based upon written proofs, and not made upon notice. When the cause was called on the calendar of this (June) term, the defendant moved for leave to withdraw the appeal, without costs, upon a notice of eight days,. and upon an agreement between the parties, under seal, disposing of and settling their differences, and consenting to the discontinuance of the appeal without costs to either party as against the other. In opposition, the attorney of the plaintiff showed by affidavits that he had not been relieved from or asked to abandon his representation of the plaintiff, and that he was interested in the action to the extent of one-half of any recovery by the plaintiff. Under such objection, coupled with substantial interest of the plaintiff's attorney in the cause of action, and no payment or tender having been made of the costs already accrued, the motion must be denied. No appearance or opposition, except as above, being offered, the judgment must, upon the motion of the respondent, be affirmed, with costs.

Judgment affirmed, with costs to the respondent. All concur.

(42 App. Div. 548.)

BROWN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. INJURY TO EMPLOYE—ASSUMPTION OF RISK.
A locomotive fireman assumes the risks of all such constructions as are reasonably adapted to the transaction of his employer's business; and where he is injured the burden rests on him to show that the particular appliance, proper in itself, by which he was injured, was either illy contrived or improperly located.

2. SAME—DEFECTIVE APPLIANCES.
Where a locomotive fireman was killed by being struck by a mail crane while on the gangway of his engine, and there was evidence that the crane

was unnecessarily near the track, and might have been located a few inches further therefrom, and that decedent was in the line of his duty, it is sufficient to support the verdict of the jury that it was negligently located.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

On evidence that it was the duty of a fireman to keep a careful lookout from the engine, and that, while looking out at an approaching train on a parallel track, he was struck by a mail crane located near the track, he cannot be found guilty of contributory negligence for failing to observe the crane while engaged in the responsible duty of watching the approaching train.

Appeal from trial term, Onondaga county.

Action by E. Louisa Brown, administratrix of Will A. Brown, against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The plaintiff in this action, which was commenced October 14, 1897, alleges that on the 16th day of August, 1896, her intestate and husband, Will A. Brown, while in the employ of the defendant, and in the performance of his duty as a locomotive fireman, was struck upon the head by an erection called a "mail crane" located near Penfield station, upon the main line of the defendant's road, and that in consequence thereof he sustained injuries which resulted in his death. At the station where this accident occurred the defendant maintains and operates four main tracks, besides one or two spur or side tracks. The main tracks are numbered consecutively from the south, track No. 1 being used by east-bound passenger trains, No. 2 by west-bound passenger trains, No. 3 by west-bound freight trains, and No. 4 by east-bound freight trains. The mail crane in question was located at a point about 400 feet west of the station, and was placed there for the accommodation of mail trains going west on track No. 2. This crane was originally erected between tracks 1 and 2, but some two or three years prior to the accident its location was changed to a point between tracks 2 and 3. The structure consisted of a wooden post, about 7 inches thick and 5 feet 4 inches high, into which was set an iron standard 1¾ inches in diameter, extending some 5 feet 2 inches above the wooden post, and forming an upright bow or curve, which projected 17 inches from the line of the standard. The extreme height of the structure was 10 feet 6 inches, and when a mail bag was attached thereto the iron standard was turned so that the bow was extended towards track No. 3, the mail pouch being suspended within the bow and over the base of support. While thus adjusted upon the day in question, and at about a quarter after 6 o'clock in the evening of that day, a freight train upon which the plaintiff's intestate was employed as a fireman was proceeding west on track No. 3 a short distance in advance of a mail train, which was approaching on track No. 2. About the time the freight train reached a point opposite the mail crane. Brown was seen to fall from his engine, and as soon as the train could be stopped he was discovered lying upon the ground between tracks 2 and 3 and about 15 feet west of the crane. The back of his head was crushed, and, although alive when first discovered, he was unconscious, and died about an hour thereafter.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Frank Hiscock, for appellant.
William S. Jenney, for respondent.

ADAMS, J. No witness was produced upon the trial who was able to state precisely how the plaintiff's intestate met his death, but there was evidence tending to show that his head probably came in contact with the iron bow of the mail crane, and the jury—as

they were doubtless entirely warranted in doing—have found by their verdict that such was the fact. We pass, therefore, to a consideration of the evidence relied upon to establish the defendant's negligence. The mail crane which caused the death of the plaintiff's intestate was a contrivance which, when operated in connection with another appliance attached to a mail car, drew a bag of mail into the car while it was in motion. The device is one which ·of late years has been adopted by the leading railroads of the country, and, while exceedingly simple in its construction and operation, its use does undoubtedly add somewhat to the hazard attending the occupation of railroading. But this fact, standing by itself, it is hardly necessary to suggest, furnishes no ground of complaint to the plaintiff, for her intestate, when he entered the defendant's service, well knew that he was engaging in an exceedingly perilous occupation, and that in consequence thereof he would be constantly exposed to the dangers ordinarily involved in the operation of a vast railroad, employing, as it necessarily did, various devices and appliances to facilitate the transaction of its business. He consequently assumed the risk of all such constructions as were reasonably adapted to the transaction of the defendant's business; and the burden consequently rested upon the plaintiff to establish that this particular appliance, entirely proper in itself, was either ill-contrived or improperly located. Sisco v. Railway Co., 145 N. Y. 296, 39 N. E. 958.

There is no contention, so far as the record disclosed, that the mail crane in question was defectively constructed; but it is asserted that it was located in such proximity to track No. 3 as to unnecessarily expose such of the defendant's employés as were in the discharge of their respective duties· upon engines and freight cars moving west to just such accidents as the one which befell the plaintiff's intestate. In order, therefore, to determine what foundation, if any, there is for such a contention, it becomes necessary to carefully examine the evidence in the case. Shortly after the accident, the plaintiff caused certain measurements to be made, in order to ascertain the relation of the crane to the two tracks between which it was located; and it appears from the testimony of the witness who made ·such measurements that the distance from the center of the standard ·to the south side of track No. 3 was 4 feet and.4 inches, while the ,distance from the same point to the north rail of track No. 2 was 4 feet and 8 inches. This same witness further testified that the gangway of the locomotive upon which the plaintiff's intestate was employed as a fireman extended 2 feet and 4 inches beyond the rail. This would leave a space of but 2 feet between the outside of the engine and the standard of the mail crane, and but 7 inches beyond the engine and the iron bow when the crane was so adjusted as to deliver a bag to a mail car while in motion. It follows, therefore, if this evidence is to be believed, that when Brown passed Penfield station upon his locomotive upon the day of the accident his head was liable to come in contact with the crane, if, for any purpose, it was projected more than 7· inches beyond the south side of the gangway. But, on the other hand, a witness was produced and sworn on behalf

of the defendant who testified that from measurements made by him while the trial was in progress he ascertained that the space between the gangway of the locomotive and the bow of the crane was $11\frac{1}{4}$ inches, and it was virtually conceded by the plaintiff's counsel that these measurements were correct. It was claimed, however, that the iron standard, which at the time of the accident was some 3 inches out of plumb, was subsequently straightened, and that this circumstance accounted for the difference in the measurements made by these two witnesses. This theory of the plaintiff was apparently adopted by the jury, and, as it was not without evidence to support it, we must assume for the purposes of this review that at the time of the accident the mail crane, when its bow stood at right angles to track No. 3, extended to within 7 inches of a locomotive passing on that track. We come, therefore, to the vital question in the case, which is, was this a reasonably proper location of the appliance? On behalf of the plaintiff it was claimed, and evidence was given which tended to sustain the claim, that the standard might have been placed several inches nearer track No. 2, and still have served the purpose for which it was designed. To meet this contention, the defendant's roadmaster testified that he located the crane with a gauge furnished by the company, and that this gauge indicated the exact point at which the crane should be located in order to fit the catcher attached to the mail car. But a witness for the plaintiff, who claimed to have had considerable experience in such matters, testified that it was not necessary to station mail cranes exactly within a prescribed distance from the side of a mail car; that the best results were obtainable by locating them so that the mail bag, when adjusted to the top of the crane, would hang at a distance of about 2 feet and 9 inches from the rail; that a variation of from 5 to 12 inches would not interfere with the successful operation of the appliance, and that a mail crane of like pattern as this one erected by this defendant at its station near the village of Clyde, and the only one as to the location of which the plaintiff was permitted to give evidence, was actually 4 inches nearer track No. 2 than the one in question. Evidence was also given from which it is insisted the jury might have found that, if this mail crane had been located a short distance further to the west, it would have been entirely feasible to throw track No. 3 a few inches further to the north, as confessedly has been done in other instances, and that, had this been done, the danger of the crane coming in contact with employés upon passing trains would have been materially minimized, if not entirely avoided. If this be so, then in this respect, if in no other, the present case differs essentially from the Sisco Case, supra, which the defendant insists is a controlling authority upon the question of its right to locate the crane where it did. We do not think the evidence bearing upon the question of the defendant's negligence relieves the case from all doubt, nor are we by any means certain that upon that evidence we should have reached the same conclusion as did the jury; but at the same time such evidence cannot, in our opinion, be said to be altogether destitute of probative force, and, inasmuch as it was submitted to the jury in an exceptionally clear and impartial

charge, we are disinclined to hold that it is insufficient to support their verdict.

As regards the question of contributory negligence, we deem it unnecessary to say much in view of a recent decision of this court in a case in which many of the facts and circumstances were quite analogous to those here presented. Benthin v. Railroad Co., 24 App. Div. 303, 48 N. Y. Supp. 503. A witness, who saw Brown almost up to the very instant at which he was struck, says that he (Brown) had apparently been engaged in raking his fire, and was replacing his rake upon the tender; that, as he did so, he stood in the gangway of the engine, looking towards the east, or in the direction from which his train was coming. It appears that one of the defendant's rules which was in force at this time required its enginemen and firemen to keep a careful lookout from the engine when rounding curves, and at all times to take every precaution for the protection of their trains. At the time Brown replaced his rake upon the tender the mail train was approaching from the east upon track No. 2, and was then in sight. In these circumstances it was not only proper, but it was his duty, to watch the approaching train as well as his own, and consequently we think the evidence was such as to authorize the jury to find that the plaintiff's intestate was killed while in the discharge of his duty; and, if so, then we think it can hardly be said as matter of law that he ought to have seen and avoided this mail crane, for it was but one of many similar contrivances located along the line of the defendant's road; and, as was said in the Benthin Case, supra, it "was not like a bridge, or a station house,—a structure,—the location of which could not well be forgotten." On the contrary, an engineman or fireman might easily have forgotten its location, or failed to observe it, while engaged in the performance of the distracting and responsible duties incident to his employment, without laying himself open to the charge of negligence, or of such negligence as would necessarily defeat a recovery in the case of accident. Wallace v. Railroad Co., 138 N. Y. 302, 33 N. E. 1069; McGovern v. Oil Co., 11 App. Div. 588, 42 N. Y. Supp. 595. Our conclusion of the whole matter therefore is that we would not be justified in disturbing the verdict of the jury, and that, consequently, the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.