MURRAY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

RAILROADS—WATER PLUG—PROXIMITY TO TRACK—KILLING OF ENGINEER—NEG-
    LIGENCE—EVIDENCE—NONSUIT.
       Plaintiff's intestate, an engineer, was killed, while leaning out of his
    engine, by being struck by a water plug which was between two main line
    tracks and 4 feet 1¾ inches from the inside rail of the track on which
    the accident occurred. The inner rails of the two tracks at that point
    were 8 feet and 10 inches apart, and the ground on each side of the tracks
    was level. The regular distance between the main tracks of defendant's
    line was 7 feet, but between side tracks or a side track and the main
    line the distance was greater in some cases than at the place of the acci-
    dent. *Held* that, in the absence of evidence that it was not good railroad-
    ing to so place a water plug, or that at any place where a water plug was
    located between the main tracks of defendant's or any other road the
    tracks were further apart than at the place in question, the entry of a
    nonsuit was proper, since there was no evidence that defendant was neg-
    ligent.

Appeal from trial term, Onondaga county.

Action by Mary C. Murray, administratrix of William H. Murray,
deceased, against the New York Central & Hudson River Railroad
Company. From a judgment of nonsuit entered by direction of the
court at the close of plaintiff's case, and from an order denying a new
trial, plaintiff appeals. Affirmed.

The action was commenced on the 17th day of July, 1899, to recover
damages sustained by the next of kin of the plaintiff's intestate on
account of his death, which occurred on the 29th day of June, 1899, as
is alleged, through the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

L. T. Jones, for appellant.
Frank Hiscock, for respondent.

McLENNAN, J. The facts in this case are not in dispute, and, so
far as material, may be very briefly stated: Plaintiff's intestate had
been in the employ of the defendant continuously for 28 or 29 years
prior to the accident, June 29, 1899. He commenced work as one of
a hand-car crew at Herkimer, and continued to work in that capacity
for about 5 years. He was then employed as brakeman on freight
trains running between Utica and Albany, but just how long he re-
mained in that service does not appear. When he ceased to work as
brakeman, he was employed as fireman, and was engaged continuous-
ly for 12 years upon engines running between East Syracuse and
Albany. He then became engineer, and continued in that employ-
ment between East Syracuse and Albany for 8 or 9 years, and until
the time of his death. It will thus be seen that the deceased was en-
tirely familiar, or at least had every opportunity to become familiar,
with the track and structures of the railroad of the defendant be-
tween East Syracuse and Albany. On the day of the accident the de-
ceased started with his engine at Ravena, the eastern end of the Mo-
hawk Division of the West Shore Railroad, to go west; went as far

as Fullerton's Junction; crossed over on to the New York Central tracks proper, and proceeded west to the place of the accident, which was a short distance west of Hoffman's Station. At this point the plaintiff's intestate was leaning out upon the side of his engine for the purpose of examining some parts of the machinery, and while thus engaged he was struck by a water plug which stood midway between the two freight tracks. He was knocked from the engine to the ground, and received injuries which caused his death soon after. The water plug stood midway between the two freight tracks Nos. 3 and 4, and 4 feet $1\frac{3}{4}$ inches from the rail of the track upon which the engine was. The distance between the inner rails of freight tracks 3 and 4 is 8 feet $10\frac{1}{4}$ inches. The water plug is several inches in diameter, and is of sufficient height so that, when swung around over the water tank of the engine, it will discharge water into it. At the place where the water plug in question was located there was a level space upon either side of the outside tracks of defendant's railroad, so that there was no physical difficulty in having the space between the several tracks greater than it was. The accident occurred in broad daylight, and there was nothing to obstruct the deceased's view of the water plug, or to prevent him from seeing it if he had looked. The plaintiff's claim is that the defendant was negligent in permitting this water plug to be so close to the track on which the engine of the deceased was. For the purpose of supporting that proposition, evidence was given tending to show that where water plugs were located upon the defendant's railroad between side tracks, or between a side track or switch and the main track, such tracks were sometimes further apart than were the tracks at the place where the accident occurred. It was not shown, however, that at any place where a water plug is located between the main tracks of the defendant's railroad, or between the main tracks of any other railroad, the tracks are further apart than at the place in question. There is not a word of evidence to indicate that the situation at the water plug which struck the deceased was in any respect different from what it is at all other places on the main tracks of defendant's railroad where water plugs are located, or different from what it is upon any other railroad. It appears that the regular distance between the main tracks of defendant's railroad is 7 feet. As we have seen, the distance between the two freight tracks at the place in question was 8 feet $10\frac{1}{4}$ inches. The evidence shows that the gangway of the engine, where plaintiff's intestate stood at the time of the accident, extended out 2 feet 2 inches beyond the track; and the engine, while in motion, it is said by one witness, will rock or swing from side to side 4 or 5 inches, which would bring the side of the gangway to within 18 or 19 inches of the water plug. Upon this evidence we think the trial court was clearly justified in determining that the plaintiff had not established any actionable negligence on the part of the defendant.

The facts in the case of Benthin v. Railroad Co., 24 App. Div. 303, 48 N. Y. Supp. 503, differ from the facts in the case at bar in every essential respect. In that case the engineer, while looking out of the side of his engine for the purpose of ascertaining whether a journal

on a car was smoking, was struck by a telegraph pole of an independent company, which, although located 49 inches from the track upon which the engine was, was, because of its leaning over, only about 4 inches from the side of the locomotive upon which the deceased stood, and it appeared that there was unoccupied land upon which the pole might have been set 12 or 13 feet away from the track; that the telegraph poles to the east and west of the pole in question were located 12 or 13 feet away from the track. And it was held in that case that the negligence of the defendant in permitting the pole to remain in the position in which it was was a question of fact for the jury. The court says, Justice Follett writing the opinion:

"It is alleged in the complaint that the defendant was negligent in permitting this pole to stand within forty-nine inches of the south rail of defendant's track, which negligence, it is alleged, was the cause of the death of the plaintiff's intestate. The evidence shows that the telegraph poles east and west of the pole in question were from twelve to thirteen feet distant from the nearest rail, and that there was sufficient unoccupied land so that this pole might have been set twelve or thirteen feet from the track. The pole formed no part of any structure belonging to the defendant's road, and necessary for its operation, and the question is not the same as presented by the nearness of the sides of bridges and like structures to the sides of passing cars."

The learned justice also calls attention to the fact that in that case whether or not the night when the accident occurred was so foggy and dark that objects could not be distinctly seen for any considerable distance was a disputed fact. In the case at bar, if the plaintiff had shown that other water plugs located between the main tracks of the defendant's railroad or those located between the main tracks of any other railroad company were further away from the tracks, so that it could be said, judging from the practice of the defendant, or of other well-managed railroad corporations, that it was not good or approved railroading to locate water plugs between the main tracks when placed so near together as they were at the place of this accident, there would have been evidence of defendant's negligence. The rule is well settled that a railroad company is not required to furnish its employés an absolutely safe place in which to work, or such a place that under no circumstances can injury result. The company is only required to furnish such appliances as are in general use, and such as are regarded as suitable, and have been adopted by railroad companies generally. As is said in the headnote in Sisco v. Railway Co., 145 N. Y. 296, 39 N. E. 958:

"An employer does not undertake with his employé to use the very best appliances; nor is he called upon to discard machinery reasonably suited for his business, although there may be other and safer machinery, at least when the appliances and machinery used by him are in common use in the business. He is simply bound to exercise reasonable care in providing machinery and appliances in view of all the circumstances."

In that case the plaintiff's intestate, a brakeman, while climbing up a ladder on the outside of one of the cars of a moving freight train, came into collision with a mail crane, and was seriously injured. It was claimed that the defendant was guilty of negligence in placing the crane too near the tracks. There was no evidence

that the crane in question was placed nearer the tracks than the cranes on other railroads, or that it was practicable to place one at a greater distance, and have it answer the purpose. It was held that there was no evidence authorizing the submission to the jury of the question of negligence.

It may be said that it was practicable to have placed the tracks at the place where the water plug in question was located further apart, because, as we have seen, there was no physical difficulty in so doing, because there was enough unoccupied land to the north; but to accomplish that purpose the four or five tracks located at that point would all have to be rearranged, and put further apart. That, however, would only have guarded against accident from a single water plug, and, if such precaution was necessary with reference to it, in order to relieve itself from negligence in case of accident the defendant would be compelled to increase the distance between the main tracks upon the entire length of its road wherever a water plug is located, and this notwithstanding the defendant, so far as appears, has located them precisely as they are located by all other railroad companies, and in accordance with the most approved methods and plans.

The case of Brown v. Railroad Co., 42 App. Div. 548, 59 N. Y. Supp. 672, is also relied upon by appellant's counsel as authority for the proposition that the defendant's negligence in the case at bar was a question for the jury. In that case, which was decided by this court, the plaintiff sought to recover damages for the death of her intestate, a fireman employed upon one of defendant's locomotives, because of the fact that a mail crane was placed between the track on which the deceased was and the track next south in such close proximity to the track on which the locomotive of the deceased was that its bow extended within seven inches of the locomotive; so close that the head of the deceased was liable to come in contact with the crane if for any purpose it was projected more than seven inches beyond the south side of the gangway of the engine while passing the same. It also appeared in that case—and stress is laid upon the fact by the justice writing for the court— that it was feasible to have located the mail crane further from the track, and also that at the time of the accident the crane was not perpendicular, and that, if it had been, instead of leaning over towards the track, as it was, the distance of the gangway of the engine to it would have been $11\frac{1}{4}$ inches, instead of 7 inches. It also appeared in that case that at least one mail crane located near the village of Clyde, erected between the main tracks and for the same purpose, was actually four inches further away from the track upon which the locomotive of the deceased was than the mail crane in question. Under the circumstances of that case this court concluded that defendant's negligence was a question for the jury, and the judgment entered upon its verdict was affirmed. The court said, however, in that case (page 553, 42 App. Div., and page 675, 59 N. Y. Supp.):

"We do not think the evidence bearing upon the question of the defendant's negligence relieves the case from all doubt, nor are we by any means certain

that upon that evidence we should have reached the same conclusion as did the jury; but at the same time such evidence cannot, in our opinion, be said to be altogether destitute of probative force, and, inasmuch as it was submitted to the jury in an exceptionally clear and impartial charge, we are disinclined to hold that it is insufficient to support their verdict."

It is apparent that the court considered that in that case it went to the full limit in holding that the evidence presented a question of fact for the jury as to defendant's negligence. In the case at bar, as we have seen, the very important element present in that case is absent, to wit, that other water plugs located between the main tracks of defendant's railroad, or between the main tracks of any other railroad, were located at a greater distance from the tracks than the water plug in question. In other words, so far as appears, the location of the water plug in question was made in accordance with the best and most approved methods of railroading, and, so far as appears, is such as is in general use, and has been adopted by the best-operated railroads of the country. If such was not the case, it was incumbent upon the plaintiff to prove the fact. It also appeared in that case that the mail crane was out of repair, and on that account was 4 inches nearer to the engine, and came to within 7 inches of it, while in the case at bar the water plug stood perpendicular, was in perfect repair, and was at least 19 inches distant from the engine, even when it was swung over as far as possible. We are not disposed to extend the rule laid down in the case of Brown v. Railroad Co., supra, and make it applicable to the state of facts disclosed by the record in the case at bar.

Being of the opinion that there was no evidence tending to support the proposition that the defendant was negligent, it is unnecessary to discuss the question of contributory negligence of the deceased, or the question of assumed risk; but in that connection, as we have seen, the deceased had been in the employ of the defendant 28 or 29 years; had passed this structure almost daily for at least 20 years; was entirely familiar with the location of all the structures connected with the tracks of the defendant; the accident occurred in broad daylight, when he had full opportunity to see the water plug, which was unobstructed. Under those circumstances it would seem that it might very properly be held as matter of law that the deceased assumed the risk, and that for that reason no recovery can be had. After a careful examination of the entire record, we are satisfied that the learned trial justice was right in granting defendant's motion for a nonsuit, and that such disposition of the case is not in conflict with any of the cases or authorities cited or relied upon by the appellant. Any other holding would involve the proposition that it is incumbent upon the defendant, in order to escape the charge of negligence in such cases, to spread all its tracks at every point where a water plug is located. With as much reason it could be argued that it is under obligation to increase the width of all its bridges, which in every case is feasible, only involving additional expense. In other words, that it is negligence to place any structure so near to a track as to come within 20 inches of the gangway of a locomotive. We think the proposition is not supported by

reason or by authority. As a result of a careful examination of the record and of the authorities, the conclusion is reached that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.