MILFORD WITHEE

*vs.*

THE SOMERSET TRACTION COMPANY.

Somerset.    Opinion July 7, 1903.

*Negligence,* Risk not assumed.    *Electric Railway.*    *Poles,* Placed too near the track.

During a crowded condition of a trolley-car, by custom and under verbal instructions to the conductor, passengers were received and permitted to ride on the platform and running boards.

In collecting the fares the conductor was obliged to pass along the running board and step around the passengers, relying on the handle bars for support.

While thus engaged in taking fares, the plaintiff, a conductor in the employ of the defendant corporation operating the road, was struck by an inclining trolley-supporting pole which, at the height of plaintiff's head, was nineteen inches from a point vertically above the outer edge of the running board on the easterly side of the track.

The accident pole was twenty-two inches nearer the rail than the average distance of the three hundred and eighty-one poles on the entire line and inclined toward the track six and a quarter inches in a height of six feet.

The plaintiff had been in the employ of the road for four years on its cars and had been previously engaged in setting trolley poles. But he had not noticed the proximity or inclination of the accident pole.

*Held;* that the defendant company was negligent in making an improper location of the pole.

*Held;* also, that there was no such want of preponderance of evidence as would justify setting aside the verdict in plaintiff's favor rendered by a jury who heard the testimony and viewed the place of the accident, either on the ground of contributory negligence or assumption of risk.

Motion by defendant.    Overruled.

Case for personal injuries.    Plaintiff was a conductor on one of defendant's electric cars.    The car, which was open, was crowded and the conductor was collecting fares on the running board when he was struck by a pole at the side of the track supporting the trolley.

The verdict was for plaintiff for $1472.08.

Defendant filed a general motion for a new trial alleging the usual grounds.

The facts are stated in the opinion.

*Forrest Goodwin,* for plaintiff.

*Geo. W. Gower,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.   The plaintiff was a conductor on an electric car used by the defendant corporation on its street railway between Madison Village and Skowhegan, in Somerset County, Maine.   On the fourth day of July, 1900, when performing the duties of his employment, he was struck by one of the poles erected and maintained by the company for supporting the trolley wires.

The action is brought to recover damages·for injuries he sustained, and which he alleges were caused by the negligence of his employer, the defendant corporation.   The verdict was for the plaintiff for the sum of $1,472.08; and the defendant brings the case to this court on motion for a new trial.

The jury must have found, first, that the defendant was guilty of negligence in reference to the plaintiff in the relation of master and servant; second, that the plaintiff did not assume as a risk incident to his employment the special danger of being hit by this particular pole as it was then located; third, that the plaintiff did not contribute to the accident by failure to use due care.

The facts upon which the question of the alleged negligence of the defendant depends relate to two elements of the proposition.

First, as to the location and other conditions of the trolley pole relative to the track and the car on which the plaintiff was serving the defendant as a conductor.

The distance from the inside of the pole to the outside of the rail was forty-four and one-fourth inches, and to the outer edge of the running board on the side of the car nineteen inches less.   The pole inclined toward the track six and one-fourth inches at the height of the plaintiff's head as he stood upon the running board, so that at

that height the handle bars on the posts of the car were twenty-four inches from the pole. The average distance from the rail of three hundred eighty-one trolley poles along the line of the road for twelve miles was about fifty-nine and one-half inches. There were six (or possibly nine) poles, a fence and trees, making eighteen objects in all which were slightly nearer to the rail than the accident pole; but they were either vertical or inclined from the track, so that at the height of the conductor's head, with the exception of one pole set in the line of trees, this one was nearest and was about twenty-two inches nearer than the average. An object at this height at a point vertically above the outer edge of the running board would be within nineteen inches of this pole.

Second. The other facts relate to the nature of the plaintiff's service and bear upon the duty which the Somerset Traction Company assumed toward its servant, the plaintiff.

The seating capacity of the open car running at the time of the accident was sufficient for about fifty passengers, but on this day there were from ninety-five to a hundred. They were received on the car in accordance with the usual custom and verbal instructions, as appears from the testimony of the plaintiff, the motor-man, and a former superintendent of the company. In consequence of the crowded condition of the car passengers stood upon the platforms at each end and on the running boards on each side.

The trolley poles were placed in different portions of the road on alternate sides, but the greater part on the easterly side of the track, among which was the accident pole. In taking the fares, which was one of the important duties of the conductor, it was impossible or impracticable when the car was crowded, as on this occasion, for him to collect them while standing on the side opposite the passenger. In passing along the running board for that purpose it was necessary to step around passengers standing upon it and to rely upon the handle bars for support.

The nearness of this inclining pole to the head of the conductor as he was performing this duty was the direct cause of the injury, and whether the location and maintenance of the pole in its position constituted a failure of the master to provide the plaintiff with a reason-

ably safe place while performing the service required of · him was an important question in issue.

There seemed to be reasons why some of the poles were placed nearer than the average distance; for example, those within the line of trees at the Clough place were naturally located at the same distance as the trees; those near the bridge at the same distance as the trestle; and those at the curves might properly be somewhat nearer than the ordinary distance, because the car inclined away from them. But no reason or explanation is given why the trolley pole in question and those immediately north and south were set nearer than was usual along the electric road.

It is claimed in behalf of the plaintiff that the company by locating this pole and allowing it to remain with a decided inclination toward its cars, fitted with running boards on which passengers were not only permitted but invited to stand when the sitting room was occupied, made it unsafe for the conductor as he passed between the pole and passengers in collecting the fares, and that it was consequently guilty of negligence in reference to him while engaged in the line of his duty. This was properly submitted to the jury for their determination.

In *Nugent* v. *The Boston, Concord & Montreal Railroad*, 80 Maine, 62, a brakeman in pursuance of the signal for setting brakes was rapidly ascending an iron ladder on the side of a box car, and was brought in contact with the end of the depot awning and suffered injuries.

In his action against the company he recovered a verdict, and upon motion for a new trial, it was held that the presiding justice properly submitted to the jury the question of the defendant's negligence and that of the plaintiff's exercise of ordinary care, and the law court declined to interpose and set the verdict aside.

Illustrations were given by reference to similar cases showing that fair-minded men may reasonably arrive at different conclusions upon admitted facts. *Gibson* v. *Erie Railway Company*, 63 N. Y. 449, 20 Am. Rep. 552; *Illinois Central Railroad Company* v. *Welch*, 52 Ill. 183, 4 Am. Rep. 593.

These cases are not unlike the case at bar. That last cited was

an action against a railroad company by a brakeman for injuries by collision with a projecting awning on one of its station-houses. And it was held that the danger was such as might well escape the observation of a person who had been in the employ of the defendant for a long period of time, and that the company was liable for the damages sustained.

The next proposition to be considered is one of equal importance.

While, by the well established rules of the law of master and servant, the master is under an implied obligation to furnish and maintain for the servant a reasonably safe place for the performance of the duties required and reasonably safe appliances connected with the business, the servant is under like obligation to use due care and to assume all obvious and usual risks incident to his employment.

If the defect was an obvious one, or if the plaintiff knew, or by the exercise of ordinary care ought to have known, that this pole was unusually near or inclined toward the track so as liable to hit a person passing another on the running board of the car, the danger was a risk which he assumed and he could not recover for injuries sustained through the negligence of the defendant in reference to its location and continuance.

In *Hall* v. *Wakefield and Stoneham Street Railway Company*, 178 Mass. 98, a conductor stepping around a person standing on the running board of the car came in collision with a tree. It was held that the tree near the track was a permanent condition of the plaintiff's employment, and that having been employed for some time he took the risk.

In *Goldthwait* v. *Haverhill, etc., Railway*, 160 Mass. 554, the plaintiff while employed in its car-house by the defendant was injured by having his leg caught between the running boards of two open cars, Barker, J., says: "It (the danger) was not only incident to his employment, but so obviously incident that he must be presumed to have known and appreciated it, and must be held to have accepted as one of the risks of his employment the danger of injury to himself by being caught between cars swinging towards each other on the tracks at the entrance of the car-house." *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79.

VOL. XCVIII 5

In *Ryan* v. *New York, etc., Railroad,* 169 Mass. 267, the plaintiff descending from a moving freight car in the discharge of his duties as brakeman was injured by coming in contact with a fence three feet and nine and one-half inches from the nearest rail of the track, Holmes, J., says: "The fence which the plaintiff struck was a permanent visible structure, and under our decisions (Mass.) did not constitute one of those unusual dangers to which an employee who has not taken the risk of them with actual knowledge of their existence has a right to assume that he will not be exposed by entering an employment."

In *Ladd* v. *Brockton Street Railway Company,* 180 Mass. 454, in some particulars closely resembling the case under consideration, the plaintiff while engaged in learning the duties of a street car conductor in the defendant's employment and having had experience on other roads and being familiar with the general duties, was struck while standing on the running board of a moving car by a trolley post and injured. The post by which he was struck was one of several along the same side of the track and about equally distant therefrom, but there was no evidence that they were unusually near the track. It was held that the plaintiff assumed the risk, and upon entering the employment of the defendant he must be held to have contracted with reference to the existing arrangement of the track and trolley posts.

The plaintiff in this case had been employed for four years by the company either as motor-man or conductor and had previously been engaged in setting trolley poles, some of them being the identical ones which are located at no greater distance from the track than the pole in question.

He testifies that the rule for locating the poles was that the distance from the center of the poles to the center of the track should be eight feet, and that he did not know that there was any deviation except in a few instances where he had observed that the track was moved toward one side of the true location so that the center stakes were not equi-distant from the rails. The poles within the line of trees at the Clough place were known to him to be nearer the track than the usual distance; but these were always kept in mind by his

observance of the requirement of the superintendent that passengers should be warned to avoid being struck by them; no instruction had been given him in reference to this pole; no notice that it was dangerously near the track, and he did not know the fact before the accident.

There is in the case the testimony of one witness which tends to show that the plaintiff did know this, because, as he states, the conductor cautioned the passengers to look out for the pole immediately before he was himself struck by it. And two other witnesses testify to the warning given by him, but not so definitely as to the words, time or place as necessarily to conflict with the plaintiff's testimony that he gave no warning as to poles but that he did so as to the trees.

It is contended by the defendant that while the plaintiff may not have appreciated or actually known the danger, his obliviousness to so obvious an object of peril to himself which he had passed thousands of times, several times daily, was more than want of ordinary care which he was bound to use, it was gross carelessness.

But his explanation is that its proximity to the track was not apparent by reason of any marked contrast with the position of other poles north and south of it, as it was in alignment with them; that he had occasion to collect fares usually at points at some distance from it, and had not necessarily passed it while standing on the running board so as to be made conscious of its unusual nearness to the car; and that when not occupied with taking fares his place was in the center of the rear platform; and while he had been employed as motor-man he stood in the center of the front platform, places not favorable for detecting or noticing such a defect. Also, in this connection, it is a relevant fact that the motor-man and former superintendent, men presumably observant and watchful, having the same opportunity and owing the same duty to the company, failed to observe this particular pole before the accident.

Affirmative proof that the plaintiff did not fail to exercise the legal standard of care is required.

In his testimony, in addition to the facts and circumstances already referred to, he states that two passengers were taken on to the east side of the car and stood upon the running board. He had previously

collected all the other fares, and for the purpose of collecting the fares of these passengers, he was in the act of passing around one or two persons holding on to the handle bars with both hands in the same manner as he had been accustomed to do, when he was brought in contact with the trolley pole.  If his testimony is true, it was the usual course in collecting fares when the car was crowded, and he would have been as free from danger as when collecting fares on the opposite side of the car but for the improper location and maintenance of this trolley pole.  But the testimony of a passenger on the car at the time tends to show that the plaintiff was negligent.  He states that in passing the witness on the running board, the conductor instead of holding to the handle bars, held to the arm of the witness. This the plaintiff denies.  Their testimony is apparently in conflict but is not so necessarily.  The plaintiff's left hand must have been released from the handle bar in passing the witness and may have involuntarily pressed against or grasped his arm.

We think the principle of *Nugent* v. *The Boston, Concord & Montreal Railroad,* supra, applies to this case and that it was for the jury to determine the question of negligence and due care; and although we might upon the evidence as reported have reached a different conclusion on some or all of the propositions involved, it is to be considered that the jury had the opportunity, which we have not had, to view the place of the accident, to observe the poles and other objects called to their attention, and to see the witnesses when testifying.

And a careful review of the case does not show such obvious want of a preponderance of the evidence in favor of the plaintiff as indicates that the jury were improperly influenced or failed to observe the rules given them by the court, nor that the damages are excessive.

*Motion overruled.*