DAVERN, Appellant, v. ROCKWELL, Respondent. (Supreme Court, Appellate Division, Fourth Department. May 10, 1905.) Appeal from Trial Term, Onondaga County. Action by Arthur T. Davern against William B. Rockwell, as temporary receiver, etc., of the Lakeside & Baldwinsville Railway. This is an appeal from a judgment of the Supreme Court, entered in the Onondaga county clerk's office January 20, 1905, dismissing plaintiff's complaint, with costs, and based upon a direction of nonsuit made at a Trial Term of said court held in said county. The action was based upon the provisions of chapter 600, p. 1748, Laws of 1902, ordinarily known as the "Employer's Liability Act." It is claimed that, while plaintiff was engaged in his duties as a conductor upon one of the trolley cars being operated by defendant, he was knocked from the running board by one of the trolley poles, and that this pole was so close to the track as to constitute an improper and negligent arrangement and construction, for which the defendant was liable. The learned trial court, in dismissing the complaint, indicated that plaintiff had failed to establish negligence upon the part of the defendant in the location of the pole, or absence of contributory negligence upon his part, and especially that he must be deemed to have assumed any risks incident to the situation. J. L. Cheney, for appellant. T. E. Hancock, for respondent.

PER CURIAM. Judgment affirmed, with costs.

HISCOCK, J. (dissenting). I think that upon all of the propositions involved in plaintiff's assertion of a right to recover against the defendant there was evidence which entitled him to go to the jury, and that, therefore, it was error to grant a nonsuit. The accident happened July 4, 1904. Since December of the preceding year defendant, as temporary receiver, had been in possession of and operating said railroad. The line of road was about 12 miles long, extending from the city of Syracuse, by the side of the boulevard upon Onondaga Lake, to the village of Baldwinsville. From the city terminus to the city limits there were double tracks, and the trolley wires upon this portion were supported by cross-wires, attached to poles situate at the curb lines of the street. From the city line, for a considerable distance, there was a single track, and the trolley wire was supported by arms extending from poles situate upon the north side of the track. This portion of the track ascends by a trestle over railroad tracks, and it was at the third pole towards Baldwinsville, from this trestle, that plaintiff met with his accident. After this section there was again a double-track construction for two or three miles, whereon the trolley wires are supported by arms attached to poles situate between the tracks, and upon the south side of the track in question here. The remainder of the road was single-track, with a trolley wire supported by poles standing upon one side of the track. These poles were about 100 feet apart for the entire distance of the road. Upon the day in question plaintiff was acting as conductor upon an open car going from Syracuse to Baldwinsville. A short distance before reaching the point of accident, a number of people boarded the car, which became so crowded that several were standing upon the north running board. There was no passageway in the car, and the only practical method by which the conductor could collect the fares was by passing along the running board. The evidence beyond any question warranted the inference that while he was engaged in this duty, passing from the front towards the rear of the car, collecting fares, and passing around people standing on the running board, the upper part of his body came in contact with the pole in question, and he was knocked off from the car, receiving severe injuries. There was no dispute about the construction of the car or the location of the trolley poles. The outside edge of the body of the car projected 1 foot, 6⅞ inches, beyond the gauge line of the rail. The hand rails upon the uprights projected 3⅜ inches beyond the body of the car. The running board upon which plaintiff was projected beyond the hand rails 5⅝ inches. This makes a total projection of 2 feet, 3⅞ inches. The pole in question was located at the ground a distance of 4 feet, 5 inches, from the gauge line of the rail. It did not stand upright, but leaned slightly away from the track, so that, at a distance of 8 feet above the rail, about the height of plaintiff's head when struck, it was 1¾ inches further away. It was opposite a curve in the track, and at that point the rail nearest the pole was so depressed below the level of the other rail that a car at a height of 8 feet would be thrown 5¼ inches nearer the pole than if level. The result of these measurements would be that a line even with the outer edge of the running board at the height of 8 feet from the ground would be brought within 21 or 22 inches of the pole. Neither the evidence in this case nor common experience warranted any other assumption than that, upon such a holiday occasion as this, passengers were liable to crowd upon the car and stand upon the running board, thus compelling a conductor, in passing around them, to go considerably further out from the body of the car towards the trolley pole than the line of the running board. Both the general duties of plaintiff and the explicit directions to him required him to take up fares along this portion of the road, as he was doing at

the time of the accident. The evidence does not at all indicate that he was taking an unusual amount of space in which to pass along the side of the car, and the fact that under these circumstances he was struck and swept off by the pole is sufficiently convincing evidence that it was located near enough the track to bring about just that result to a conductor engaged in the discharge of his duties. It seems to me that the authorities abundantly establish that the jury may find the operator of a railroad negligent for placing or leaving beside the track poles or other obstructions, which are so close as to injure employés engaged in the ordinary and proper discharge of their duties. True v. Niagara Gorge R. R. Co., 70 App. Div. 383, 75 N. Y. Supp. 216, affirmed 175 N. Y. 487, 67 N. E. 1090; Withee v. Somerset Traction Co., 98 Me. 61, 56 Atl. 204; Pierce v. Camden, etc., Ry. Co., 58 N. J. Law, 400, 35 Atl. 286; Pikesville, etc., Co. v. Russell, 88 Md. 563, 42 Atl. 214; Chicago, etc., R. R. Co. v. Russell, 91 Ill. 298, 33 Am. Rep. 54; Brown v. N. Y. C. R. R. Co., 42 App. Div. 548, 59 N. Y. Supp. 672; Benthin v. N. Y. C. R. R. Co., 24 App. Div. 303, 48 N. Y. Supp. 503. It is urged in behalf of the defendant that the case of Drake v. Auburn City R. R. Co., 173 N. Y. 466, 66 N. E. 121, compels a different conclusion upon the facts of this case. In that case, plaintiff, who was a conductor moving upon the running board of an open car, was struck off by one of a row of trees, and it was held that he could not recover. The learned judge writing the opinion said: "It was clearly error to submit to the jury the question whether it was negligence on the part of the defendant to maintain its road so near the line of trees." Considered simply by themselves, these words possibly might seem to bear the construction that a railroad company could not be made liable for so locating and operating its track that employés would be swept off cars by poles or other obstructions. I think, however, that the opinion, considered as a whole, does not bear any such interpretation as this, but is to be construed in connection with the facts and other principles of law appearing in that case. It was held, as a matter of law, that the plaintiff there, through full knowledge and appreciation of the situation, had assumed any risks incident to the location of the track and the trees. This being so, the natural obligations of the employer towards him were modified by this assumption of risk, and it was error to allow the jury to find that the defendant was guilty of negligence for continuing the situation to which the plaintiff had assented. Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541. Further than this, the decision by the Court of Appeals in the True Case, supra, decided after the Drake Case, seems to indicate the affirmance by that court of the same principles of duty upon the part of an employer towards an employé which are invoked in this case. It is suggestively argued by the learned counsel for the respondent that the defendant, on account of his position as temporary receiver, is not subject to the same rules which would apply to the corporation itself. I do not, however, regard this contention as requiring serious consideration. He had been in pos-

session of the road for several months, operating it and taking all receipts for the benefit of the owners. If a judgment is recovered here, it will be a claim against that property, and I do not apprehend that a receiver may operate a road for the purpose of gain without subjecting the property at least to the obligations of a reasonable and proper management. Peirce v. Van Dusen, 78 Fed. 693, 24 C. C. A. 280; Klein v. Jewett, 26 N. J. Eq. 474; Wall v. Platt, 169 Mass. 398, 48 N. E. 270.

I come next to the consideration of the questions, somewhat allied in this case, at least, whether plaintiff assumed the risks incident to the location of this pole so as to relieve defendant from any liability therefor, or whether he was guilty of contributory negligence in not seeing and avoiding it. The plaintiff seeks to strengthen his position at this point by the provisions of section 3 of the employer's liability act already referred to. He claims that, even if he did, as urged by defendant, know about the location of this pole, and had discovered or been informed of the dangers which might result therefrom, he is not to be held, as matter of law, to have assumed the risk, or to have been guilty of contributory negligence, by continuing in the employ of the defendant and doing as he was doing when injured; and, of course, the section referred to does contain provisions along this line for the benefit of certain employés, seeking to enforce a liability against their employers for personal injuries. I do not, however, think that the plaintiff can get any help in this case from those provisions. The same section which contains them provides that "an employee, or his legal representative, shall not be entitled under this act to any right of compensation or remedy against the employer in any case where such employee knew of the defect or negligence which caused the injury and failed, within a reasonable time, to give or cause to be given, information thereof to the employer, or to some person superior to himself in the service of the employer * * * unless it shall appear on the trial that such defect or negligence was known to such employer or superior person, prior to such injuries to the employee." Outside of any presumptions which may be applicable, there is nothing to show express knowledge by defendant of the location of this pole. The plaintiff never served upon him, or any one else, the notice specified prior to the accident. As already stated, this action is founded expressly upon this act, and not upon any common-law liability, and therefore, if plaintiff before the accident knew of the alleged dangerous location of the pole and of the negligence of the defendant in permitting it to be there, he cannot recover, because he has not given the notice. Therefore he must stand upon the proposition that before the accident he did not know of or understand the location of this pole, or appreciate or assume the risks which resulted therefrom. Notwithstanding the prior provisions making his assumption of risk or contributory negligence, even though he understood the situation, a question of fact, instead of law, he must, in order to avoid the results of failure to serve notice of the alleged negligent situation upon the employer, establish, as I think,

substantially the same facts which would have excused him from the charge of assumed risks or of contributory negligence in an action founded upon common-law principles of liability. Reference has already been made to the general location of trolley poles along the line of this road. So far as I am able to discover no evidence has been given with reference to the exact distance from the track of these poles, except in the case of the first six after passing over the trestle. So far as appears, those, other than these six, standing upon the north side of the track, were so far away as to give no notice or warning that danger was to be expected from the proximity of trolley poles. When we come to the six in question, we find that, at a distance of 7 or 8 feet from the ground, the distance of each from a car, as modified by the incline of the pole and the incline of the car on account of the depressed rail of the curve, was different. No two poles were at the same distance from the car, and the poles which plaintiff passed before reaching the one which struck him were several inches further away than the one in question, and in fact enough so, so that I think a jury might say that the difference constituted a margin of safety. And in the same way the poles to be passed after the one causing the accident were, in part, at least, further away from the car than it. We therefore have it that, so far as appears at this point, upon a line of 12 miles were half a dozen poles of exceptional location, and some of those were far enough away from the track to avoid any reasonable probability of an accident. In addition, the depressed rail upon the curve at this point caused an exceptional proximity of car and pole. Plaintiff's opportunity for observation had been limited. He first commenced work upon May 27th or 28th as an extra conductor, and thereafter worked at irregular times until the time of the accident. He had made about 73 trips, and, including the taking of his car from and to the barn, had gone by this point about 167 times. Thirty-four of these trips, however, were after dark, and very many more were upon cars different from that which he had upon the occasion in question, and which do not appear even to have been open cars. It is apparent at once that a trip in a closed car would neither impose the obligation nor afford the opportunity to observe the location of trolley poles. There is some evidence that he had lived near this road, but no evidence whatever to indicate that his residence or trial experience had enabled him, much less called upon him, to observe the particular location of poles prevailing at the point of the accident. The fundamental question, therefore, is presented, upon this branch of the case, whether a conductor, passing over a road 12 miles long, with 8,000 trolley poles, a very limited number of times, when he had an opportunity for observation, busied with other duties, is to be charged as matter of law with knowledge of the location of a few exceptional poles, which he positively swears as a matter of fact he never observed; because, if he is not to be thus charged with knowledge, we do not see how it can be said as matter of law that he appreciated and assumed the risk of the location, or was guilty of contributory negli-

gence, in not looking out for and avoiding a danger of which he was ignorant. As already indicated, I do not think that the court may rule against the plaintiff as a matter of law upon this question, but that the defendant is only entitled to have the jury pass upon it as a question of fact. Reference may be made again to the True Case, supra, where this question of knowledge and assumption of risk was sharply presented and discussed. There the accident arose from the proximity of two tracks, which continued for a distance of nearly 200 feet and was a permanent, perfectly obvious feature. The plaintiff had been operating a car for 30 days, going over this portion of the road from 12 to 15 times each day, and mostly in the daylight. He was familiar with the general construction of cars, and it was argued that he could not have failed to notice the location of the tracks and appreciate that cars passing there would come close together, as they did when he was injured, and that, therefore, he should be held as matter of law to have assumed the risk of employment, and also that he was careless in getting between the cars as he did. The Court of Appeals, however, unanimously upheld the decision of a majority of this court that the claims so made in behalf of the defendant presented questions of fact, and could not be disposed of as matters of law. I think that the questions of plaintiff's assumption of risks and contributory negligence were for the jury, also, within the principles laid down in Benthin v. N. Y. C., etc., R. R. Co., 24 App. Div. 305, 48 N. Y. Supp. 503; Pierce v. Camden, etc., Ry. Co., 58 N. J. Law, 400, 35 Atl. 286; Johnson v. St. P., etc., Ry. Co., 43 Minn. 53, 44 N. W. 884; Wood v. Louisville, etc., Ry. Co. (C. C.) 88 Fed. 44.

SPRING, J., concurs.